## UNITED STATES *v.* McKEE ET AL.

The claim of the heirs and legal representatives of Colonel Francis Vigo against the United States, on account of supplies by him furnished in 1778 to the regiment under the command of George Rogers Clarke, who was acting under a commission from the State of Virginia, was, by an act of Congress approved June 8, 1872 (17 Stat. 687), referred to the Court of Claims, with the direction that the court, in settling it, should be governed by the rules and regulations theretofore adopted by the United States in the settlement of like cases, and without regard to the Statute of Limitations. *Held,* that the act removes the bar of the lapse of time; and that, as the case is like those in which interest was to be allowed by the fifth section of the act of Aug. 5, 1790 (1 Stat. 178), the claimants are entitled to recover the principal sum, with interest thereon.

APPEAL from the Court of Claims.

The court below allowed the claim, with interest thereon from the time it accrued, and, among other facts, found that " no rules and regulations have heretofore been adopted by the United States in the settlement of like cases, except such as may be inferred from the policy of Congress when passing private acts for the relief of various persons. When passing such private acts, Congress has allowed interest upon the claim up to the time that the relief was granted."

The facts are stated in the opinion of the court.

The case was submitted on printed arguments by *Mr. Solicitor-General Phillips* for the United States, and by *Mr. William Penn Clarke*, for the claimants.

Only so much of their argument as relates to the allowance of interest can be here given.

*The Solicitor-General* submitted, that, so far as he knew, this was the first case in which interest had been allowed for so long a period. The court below had allowed it from March the 20th, 1779, to the day when judgment was entered, although this court, in *Gordon* v. *United States*, had expressly declared that it did not sanction the allowance of interest on claims against the government. The right of the claimants to interest must turn entirely upon the wording of the act of 1872 referring this case to the Court of Claims, inasmuch as, under the general law, that court has no authority to allow interest in such a case. Rev. Stat., sect. 1091. Undoubtedly Congress has the power to order that interest shall be paid; but no such order was given by that act. The words relied on by the other side are, " And, in making such adjustment and settlement, the said court shall be governed by the rules and regulations heretofore adopted by the United States in the settlement of like cases; giving proper consideration to official acts, if any have heretofore been had in connection with this claim, and without regard to the Statute of Limitations." Referring to the specific finding of the Court of Claims upon this point, it seems, —

*First,* That " rules and regulations," in the above connection, refer to the action of the departments under general principles governing " like cases," and not to the exceptional dealing

evidenced by *special* acts of Congress. Prior legislation for special cases is not included in these words. They are well known to refer to the *quasi* legislation by heads of departments, &c., in refe .ence to matters ordinarily coming before them.

*Second,* Also that the court will *sua sponte* inform itself of the action of the United States by rules and regulations in such cases.

*Third,* Therefore that the above finding of the Court of Claims appears to be inadvertent, inasmuch as it can be seen that " rules and regulations " *have been* heretofore adopted by the United States in the settlement of like cases, and that these rules *exclude interest,* unless given in terms by an act of Congress.

The Solicitor-General inserted in his brief the following note from the First Comptroller of the Treasury : —

"FIRST COMPTROLLER'S OFFICE, Nov. 13, 1875.

" SIR, — In answer to your inquiry, I have to state, that in the adjustment and settlement of claims for services rendered by officers of the United States during the Revolutionary war, or for supplies furnished the troops in that war, the rules and regulations heretofore adopted by the United States prohibit the payment of interest, unless authority to pay is expressly given by act of Congress in special cases.

" Executive document No. 42, vol. ii., second session Twenty-fifth Congress, contains a synopsis of the legislation of Congress on Revolutionary claims up to 1837, showing the cases in which interest has and has not been allowed.

" Very respectfully,

"R. W. TAYLOR, *Comptroller.*

" Hon. S. F. PHILLIPS, *Solicitor-General.*"

And referred to the opinion of Mr. Whittlesey when first comptroller in regard to a claim for interest upon a Revolutionary debt preferred by the heirs of one John Campbell : —

" The rules of settlement of the treasury do not permit the allowance of *interest,* except where it is specially provided for in cases of contracts, or expressly authorized by law. Consequently, the item of interest charged by said claimant has been deemed inadmissible."

The act which made it the duty of the Treasury Department to audit and adjust that claim required that this should be done *upon principles of equity and justice.* Upon this point Mr. Whittlesey says, —

" Suppose the act had directed the account to be settled and paid, and had said nothing more : interest could not have been computed without violating the principles which have controlled the settlement of accounts and claims from the commencement of the government; and, as I have said before, the discretion to settle the claim on the principles of 'justice and equity' does not confer the power to allow interest." P. 53.

Mr. Whittlesey, in confirmation of his opinion, cites a former decision upon the same question by Richard Harrison, first auditor, and Joseph Anderson, first comptroller; also an opinion of Mr. Hagner, first auditor for many years after the organization of the government, against the allowance of interest upon Revolutionary claims, except where specially given by an act of Congress. Ex. Doc. H. R., No. 260, First Sess. 26th Congress, vol. vii.

As the " rules and regulations " of the United States refuse interest unless specially given by some act of Congress, and as the present act refers the question of interest entirely to the " rules and regulations," and otherwise is silent thereupon, it seems that the claimants are, at all events, entitled to no interest.

*Mr. Clarke, contra.*

By the following acts of Congress, interest was allowed; viz. : —

Act of Jan. 14, 1793, in case of Return J. Meigs and the legal representatives of Christopher Greene, deceased. 6 Stat. 11.

Act of May 31, 1794, in case of Arthur St. Clair. Id. 16.
Act of Feb. 27, 1795, in case of Angus McLean. Id. 20.
Act of Jan. 23, 1798, in case of General Kosciusko. Id. 32.
Act of May 3, 1802, in case of Fulwar Skipwith. Id. 48.
Act of Jan. 14, 1804, in case of John Coles. Id. 51.
Act of March 3, 1807, in case of Oliver Pollock. Id. 65.
Act of March 3, 1807, in case of Stephen Sayre. Id. 65.
Act of April 25, 1810, in case of Moses Young. Id. 89.

Act of Jan. 10, 1812, in case of John Burnham.  Id. 103.

Act of July, 1812, in case of Anna Young.  Id. 110.

Act of Feb. 25, 1813, in case of John Dixon and John Murray; also the second section of same act, in case of John Murray. Id. 117.

Act of April 13, 1814, in case of Joseph Brevard.  Id. 134.

Act of April 26, 1816, in case of heirs of Alexander Roxburgh. Id. 167.

Act of April 14, 1818, in case of John Thompson.  Id. 208.

Act of May 11, 1820, in case of Samuel B. Beall.  Id. 249.

Act of May 15, 1820, in case of Thomas Leiper.  Id. 252.

Act of May 7, 1822, case of the legal representatives of John Guthry, deceased.  Id. 269.

Act of same date, in case of John Crute.  Id. 276.

Act of March 3, 1823, in case of the legal representatives of James McClung.  Id. 284.

Act of May 5, 1824, in case of Amasa Stetson.  Id. 298.

Act of May 20, 1826, in case of heirs of John W. Baylor.  Id. 351.

Act of March 3, 1827, in case of B. J. V. Valkenburg, — a case in which the government paid interest upon interest.  Id. 365.

Act of May 19, 1828, in case of the legal representatives of Patience Gordon.  Id. 378.

Act of May 24, 1828, in case of Ward & Brothers.  Id. 386.

Act of May 31, 1830, in the same case.  Id. 450.

Act of May 29, 1830, in case of Benjamin Wells.  Id. 447.

Act of March 2, 1831, in case of Lucien Harper.  Id. 457.

Act of May 19, 1831, in case of Richard G. Morris.  Id. 486.

Acts of July 4, 1832, in cases of Aaron Snow, id. 503 ; and W. P. Gibbs, id. 504.

Two acts of July 14, 1832, — one in case of Gertrude Gates, id. 521 ; and the other in case of John Peck, id. 524.

Act of same date, in case of John Laurens.  Id. 514.

Four acts of March 2, 1833, in cases of Archibald Watt, id. 537 ; Eleanor Courts, id. 542 ; and in cases of two officers in the army of the Revolution, id. 543, 544.

Act of June 19, 1834, in case of Dr. John Berrien.  Id. 565.

Act of June 27, 1834, in case of the legal representatives of Christian Ish.  Id. 570.

Three similar acts.  Id. 574, 576.

Act of June 30, 1834, in case of John Peck, id. 582.  Act of same date in case of Captain George Hurlburt, id. 589.

And act of July 2, 1836, in case of the same Captain George Hurlburt. Id. 674.

Act of March 3, 1847, in case of the legal representatives of Simon Spaulding, id. 694.

Act of Aug. 18, 1856, in case of Thomas H. Baird, administrator of the estate of Absalom Baird.    11 id. 467.

Mr. Clarke referred further to the following acts of Congress, authorizing settlements and payment of accruing interest in cases where money had been *advanced* for the United States, or where drafts drawn by its disbursing officers had been protested for non-payment; viz. : —

Act of July 14, 1832, in case of the widow and children of E. T. Warren.    6 id. 513.

Act of July 14, 1832, in case of Hartwell Vick.    Id. 523.

Act of Feb. 27, 1833, in case of Riddle, Becktle, Headington, & Co.    Id. 537.

Act of July 7, 1838, in case of Richard Harrison.    Id. 734.

Act of Aug. 3, 1846, in case of Felix St. Vrain.    Id. 658.

Act of Aug. 10, 1846, in case of Abraham Horbach.    9 id. 677.

Act of Feb. 5, 1859, in case of Thomas Laurent.    11 id. 558.

It might be contended that Revolutionary claims of this class are not entitled to bear interest until they have been settled, and certificates of final settlement issued.    Many of the statutes cited disprove such a position, and show that Congress authorized the payment of interest from the date of the rendition of the services, or the furnishing of the supplies.    In further elucidation of this point, the following acts of Congress are referred to ; viz : —

Act of July 14, 1832, in case of the heirs of Thomas Davenport. 6 id. 518.

Act of July 14, 1832, in case of John J. Jacobs.    Id. 516.

Also act of July 14, 1832, in case of the heirs of Colonel Robert H. Harrison.    Id. 437.

It is submitted that the act of Congress under which this suit was brought authorizes the Court of Claims, in the settlement and adjustment of the claim, to allow interest, and that it was the purpose of Congress to treat this case as other Revolutionary cases had been treated.    By no other construction can effect

be given to the words, "And, in making such adjustment and settlement, the said court shall be governed by the rules and regulations heretofore adopted by the United States in the settlement of like cases." If Congress had intended that only the face of the draft should be paid, it could have said so in much fewer words; in fact, it would most probably have made a direct appropriation for the payment of that sum. However much the decisions of the accounting officers in other cases may be respected, they cannot be regarded as binding, in face of the expressed will of Congress, and the whole scope of legislation governing "like cases."

Mr. Justice Miller delivered the opinion of the court.

The claim of the State of Virginia to dominion over that region of country called the "Territory North-west of the Ohio River, which is now filled with a population of many millions and divided into five States of the Union, was not undisputed in the days when that State was a province of Great Britain. The French had numerous settlements there; and the government of Great Britain claimed, both by the acquisition of Canada and by settlement, a large part of that loosely defined country. They had their military posts there, as well as peaceful villages. The Indians also denied all right of the Colony of Virginia to rule over them; and some of the most warlike tribes of that race were known to occupy, with claim of exclusive right, the largest part of the country.

During the Revolutionary war, General George Rogers Clarke, acting under a commission from the State of Virginia, fitted out a warlike expedition, and starting from the falls of the Ohio, now called Louisville, made his appearance suddenly before the military post of Kaskaskia, then held by the British, and captured it and several other posts, and, in the course of one of the most romantic campaigns which the history of that region down to this day affords, effectually settled the right of Virginia to supremacy in that quarter.

General Clarke was not very vigorously supported by Virginia in this enterprise; for it occurred during the war of the Revolution, and that Commonwealth, as she now called herself, was engaged in more pressing affairs. It seems, however, that the

State had in New Orleans an agent on whom Clarke drew several drafts for funds to aid him in the matter, most of which were paid.

In the year 1778 he drew one of these drafts in favor of Francis Vigo for $8,616, which was not paid for want of funds. This draft was given for supplies furnished to Clarke's regiment, and has never yet been paid. It does not appear that the State of Virginia ever denied the justice of this debt; but by the finding of the Court of Claims, from which this record comes to us on appeal, it does appear that an officer of that State, called the Commissioner of Revolutionary Claims, examined into this one in the year 1835, and adjusted it, including interest, at $32,654.85.

In the course of the negotiation for the relinquishment of title by the States to their outlying territories, one of the resolutions passed by the Continental Congress Oct. 16, 1780 (6 Jour. of Cong. 213), was, that, when so ceded, "the necessary and reasonable expenses which any particular State shall have incurred since the commencement of the present war, in subduing any British post, or in maintaining forts or garrisons within and for the defence, or in acquiring any part, of the territory that may be ceded or relinquished to the United States, shall be reimbursed."

The debt represented by this draft comes directly within the language of this resolution, which was repeated by the Virginia legislature in the act of cession.

But by the act of Aug. 5, 1790, by which Congress constituted a board of commissioners to adjust all claims of the several States against the United States, there was a provision that no claim of a citizen of a State should be admitted as a claim against the United States which had not been allowed by the State before the twenty-fourth day of September, 1788. As the claim of Vigo, on account of this draft, had not then been allowed by the State of Virginia, this proviso has remained as a perpetual bar to its payment or allowance by those commissioners, or by any other officer of the government.

Congress, however, by many private acts, has authorized the payment of other claims similarly barred. This claim has been

constantly pressed upon the attention of Congress by the heirs of Vigo; until finally the case was, by the act of June 8, 1872, referred to the Court of Claims in the following language : —

· " The claim of the heirs and legal representatives of Colonel Francis Vigo, deceased, late of Terre Haute, Ind., for money and supplies furnished the troops under command of General George Rogers Clarke in the year 1778, during the Revolutionary war, be, and the same hereby is, referred, along with all the papers and official documents belonging thereto, to the Court of Claims, with full jurisdiction to adjust and settle the same; and, in making such adjustment and settlement, the said court shall be governed by the rules and regulations heretofore adopted by the United States in the settlement of like cases, giving proper consideration to official acts, if any have heretofore been had in connection with this claim, and without regard to the statutes of limitations."

We entertain no doubt that the claim was a just claim in the hands of Vigo against the State of Virginia, and that, under the resolutions of the Congress of the United States and the State of Virginia, it belonged to that class of claims which Congress had assumed on receiving from that State the cession of the territory north-west of the Ohio. The wisdom of the act of Congress of 1790 in fixing a date after which the States could not make allowances of claims which should bind the United States is apparent; and nothing could be more just or honorable than that Congress, when appealed to for a relaxation of this salutary general rule of exclusion in favor of the private citizen who had a meritorious case, should grant relief. It seems clear to us, that, in the act of 1872, Congress did mean to remove this bar of the lapse of time, and to authorize the Court of Claims, if they found the claim to be a just one, to settle and allow it.

That the allowance of the principal sum was right, we think is beyond question; but the allowance of interest admits of discussion.

It has been the general rule of the officers of government, in adjusting and allowing unliquidated and disputed claims against the United States, to refuse to give interest. That this rule is sometimes at variance with that which governs the acts of private citizens in a court of justice would not authorize us to

depart from it in this case.    The rule, however, is not uniform; and especially is it not so in regard to claims allowed by special acts of Congress, or referred by such acts to some department or officer for settlement.

The counsel for claimant has, in a careful brief, collected with much labor numerous cases in which interest has been allowed by Congress in the adjustment of disputed claims.    The fifth section of the act of Aug. 5, 1790, already referred to, directed the commissioners, who under that act were to settle the claims of the States against the General Government, to allow interest; and, but for the bar of time in that act, this case would have come under that statute.    The act under which the Court of Claims took jurisdiction of this case directed it to be "governed by the rules and regulations heretofore adopted by the United States in settlement of like cases."    This is a like case to those in which interest was to be allowed by the act of 1790.

The bill of exchange drawn by Clarke in favor of Vigo is an instrument, which, by the commercial usage of all nations, bears interest after it becomes due.    It also evidences the claim as a liquidated sum.    There has never been any dispute about the amount due, if the claim was legal; and though the United States is not directly bound by the instrument, yet, if they choose to remove the bar of time, as the act of 1872 does in express terms, and it is found that the claim is one which the government has by law agreed to pay, we see no reason why it should not be paid in full, with all its legal incidents, as the State of Virginia should and would have paid it, had not the liability been assumed by the United States when she received the cession of that immense country, — a consideration ample enough for this and all other obligations she assumed in that contract.

*The judgment of the Court of Claims is affirmed.*

MR. JUSTICE DAVIS did not hear the argument in this case, and took no part in its decision.

MR. JUSTICE CLIFFORD, with whom concurred MR. JUSTICE HUNT, dissenting.

I dissent from so much of the opinion of the court as allows

interest to the claimant.  Unless where the contract is express to that effect, the United States are not liable to pay interest. Interest should never be allowed on old claims, where payment has been deferred because the accounting officers of the treasury were of the opinion that further legislation was necessary to authorize their allowance, unless the new law clearly provides for the payment of interest as well as principal.