These are our views on the subject, in which both judges concur. They cover the whole ground; and my associate, Judge CHOATE, says that he has nothing to add.

-----

COMMISSIONERS OF THE SINKING FUND OF LOUISVILLE *et al. v.* BUCKNER *et al.*

(*Circuit Court, D. Kentucky.*  December 1, 1891.)

1. CIRCUIT COURTS—JURISDICTION—SUIT TO RECOVER INTERNAL TAXES.
   A suit against an internal revenue collector to recover taxes alleged to have been illegally collected is cognizable in the circuit court, both under Rev. St. U. S. § 629, giving that court jurisdiction of causes arising under any law providing internal revenue, and under Act Cong. March 3, 1887, giving it jurisdiction of causes arising under the laws of the United States.

2. LIMITATION OF ACTIONS—DEMURRER.
   In a suit to recover internal revenue taxes alleged to have been illegally collected, where the complaint shows that more than two years have elapsed, and it is therefore barred by Rev. St. U. S. § 3227, the bar may be raised by demurrer, since that section contains no exceptions.

3. INTERNAL REVENUE—ILLEGAL TAXATION—SUIT TO RECOVER.
   As the right to sue the United States through its collectors, to recover taxes alleged to have been illegally collected, is only a remedy given by statute, no such right exists, unless the conditions prescribed by Rev. St. U. S. §§ 3226, 3227, are strictly complied with, namely, that an appeal must first be taken to the commissioner of internal revenue, and the suit must be brought within two years from the date of his decision.

4. LIMITATIONS OF ACTIONS—CLAIM BY CITY.
   The rule that statutes of limitation do not run against the state does not apply in favor of a city, in virtue of the governmental powers exercised by it, in respect to a claim of the city against the United States for taxes alleged to have been illegally collected.

5. SAME—REMOVAL OF BAR.
   Act Cong. June 16, 1890, authorized the secretary of the treasury and the commissioner of internal revenue to audit and adjust the claim of the city of Louisville "for internal revenue taxes on dividends on shares of stock" owned by the city in the Louisville & Nashville Railroad Company, "to the extent that such taxes were deducted from any dividends due and payable," and to pass upon the claim "in the same manner as if said claim had been presented and prosecuted within the time limited and fixed by law." *Held,* that this removed the bar of the statute of limitations against the claims specified, in respect both to taking an appeal from the collector to the commissioner of internal revenue, as provided in Rev. St. U. S. § 3226, and to the time of bringing suit, as provided in section 3227.

6. SAME.
   But the words of the act, "taxes on dividends on shares of stock" owned by the city, do not include taxes paid by the railroad on its gross receipts and on undivided profits, and the bar is not removed as to a claim therefor.

7. SAME—INTEREST ON ILLEGAL TAXES.
   As the taxes were originally paid without protest, and no appeal was taken to the commissioner of internal revenue, and no demand made for repayment, no interest would have been allowed on the claim, under the general policy of the government, if it had been prosecuted before the statute had run to completion; and therefore, as the act of 1890 authorized judgment to be rendered on the claim "in the same manner and with the same effect as if said claim had been presented and prosecuted within the time fixed by law," no right to interest was given thereby.

At Law.  Action by the commissioners of the sinking fund of Louisville, Ky., against Lewis F. Buckner, as executor of James F. Buckner, and others, to recover taxes alleged to have been illegally collected by

James F. Buckner, as collector of internal revenue for the United States. Heard on demurrer to the bill. Demurrer sustained.

*Albert S. Willis* and *F. T. Fox*, for plaintiffs.

*George W. Jolly*, U. S. Atty., for defendants.

BARR, J. The plaintiffs sue the defendants, who are the executors and heirs of James F. Buckner, for various sums of money, which he, as collector of internal revenue for this district, received before the 1st of May, 1872, and which they allege were taxes illegally assessed and collected of the Louisville & Nashville Railroad Company, under the authority of various acts of congress. The city of Louisville was at the time a large stockholder in said railroad company, and plaintiffs claim that the taxes which were assessed and collected of said company on the city's share of the gross earnings, the undivided surplus, and the dividends (cash and stock) of said company were illegal and invalid. Neither the city of Louisville nor the commissioners of the sinking fund had made application to have said taxes refunded within the time or in the manner required by the acts of congress. Congress, by an act approved June 16, 1890, and entitled "An act for the relief of the board of the commissioners of the sinking fund of the city of Louisville, Ky.," enacted as follows:

"That the secretary of the treasury and the commissioner of internal revenue be, and they are hereby, authorized and required to audit and adjust the claim of the board of the sinking fund commissioners of the city of Louisville, Kentucky, for internal revenue taxes on dividends on shares of stock owned by said board for said city of Louisville in the Louisville and Nashville Railroad Company, to the extent that such taxes were deducted from any dividends due and payable to said board, and to pass upon said claim, and render judgment thereon in the same manner, and with the same effect, as if said claim had been presented and prosecuted within the time limited and fixed by law."

The plaintiffs presented their claim under this law, and the secretary of the treasury and commissioner of internal revenue allowed them $42,514.03, which has been paid by the United States. This sum was the taxes collected on the dividends, both cash and stock, which were declared by the railroad company and paid by the city of Louisville. They, however, refused to allow any interest, or to refund the taxes which had been collected on the gross receipts, and the taxes on the undivided profits or surplus.

This suit is brought to recover interest on $9,494.72 from May 9, 1872, which sum is the amount of taxes he collected on dividends belonging to the city of Louisville, and which had been refunded to plaintiffs without interest; and the sum of $4,590.57, which is the city's share of the taxes alleged to have been received by said Buckner, as collector, from the railroad company, on its gross receipts, with interest from November 28, 1870; and $1,704.20, which is the taxes alleged to have been collected by him on the city's share of the undivided surplus or profits, with interest from November 10, 1871.

The defendants have demurred to the petition, and have alleged several grounds therefor. The first is that this court has no jurisdiction. The plaintiffs and defendants are citizens of the same state, but we think this is a cause arising under a law of the United States providing internal revenue, and is one of the class of cases of which the circuit court is given jurisdiction by the fourth subdivision of section 629, Rev. St. It is also a case arising under the laws of the United States, and is within the first clause of the act of March 3, 1887, which gives the circuit court jurisdiction of causes arising under the laws of the United States. 25 St. at Large, p. 434. This ground of demurrer is therefore overruled.

The second ground is that the petition shows the plaintiffs' cause of action accrued more than two years before the commencement of this suit, and is therefore barred by section 3227, Rev. St. The bar of a statute of limitation may be raised by demurrer when there is no exception to the statute, and the petition shows the bar of the statute complete. *Bank* v. *Lowery*, 93 U. S. 72; *Bank* v. *Carpenter*, 101 U. S. 567; *Rankin* v. *Turney*, 2 Bush, 555; *Chiles* v. *Drake*, 2 Metc. (Ky.) 146.

In cases like this one, there can be no doubt of this, as the action is really a statutory remedy, and an indirect action against the United States, although nominally against a collector for the recovery of taxes illegally collected by him. The appeal of the commissioner of internal revenue to refund taxes illegally assessed and collected, and then a suit within the time provided by the statute, is a condition precedent. The supreme court, in discussing this subject, lays down this rule:

"An allowance by the commissioner in this class of cases is not the simple passing of an ordinary claim by an ordinary accounting officer, but a statement of accounts by one having authority for that purpose, under an act of congress. Until an appeal is taken to the commissioner, no suit whatever can be maintained to recover back taxes illegally assessed or erroneously paid. If on the appeal the claim is rejected, an action lies against the collector, (Rev. St. § 3226,) and through him, on establishing the error or illegality, a recovery can be had. If the claim is allowed, and payment for any cause refused, suit may be brought in the court of claims. This, as it seems to us, is the logical result of the legislation of congress upon the subject." *U. S.* v. *Bank*, 104 U. S. 734.

An action like this one is not a common-law action for money had and received, but is a remedy given and regulated by statute. See sections 989, 3220, 3226–3228, 3689, Rev. St., and *Cheatam* v. *U. S.*, 92 U. S. 85; *James* v. *Hicks*, 110 U. S. 272, 4 Sup. Ct. Rep. 6; *Arnson* v. *Murphy*, 109 U. S. 238, 3 Sup. Ct. Rep. 184, 115 U. S. 584, 6 Sup. Ct. Rep. 185; *Savings Inst.* v. *Blair*, 116 U. S. 200, 6 Sup. Ct. Rep. 353.

The ingenious argument in the able brief of the counsel for the plaintiff, to prove that the limitation of the statute as to the time of bringing suit does not apply, is not convincing, because, as we have seen, the remedy they are pressing is a statutory one, given by congress, by which the United States is being sued indirectly through a suit against a collector of the internal revenue. This remedy is given only when the statute is followed, and when the suit is brought within the time designated in the statute, and there is no exception in this act in favor of

even a state of this Union, much less a city. The statutory remedy must be pursued as granted by congress, else there is no right of action. But if this action was a common-law one, for money had and received, we think the bar of the statute of limitation would apply to the plaintiffs' action, if nothing else appeared. Assuming that the holding of stock in the Louisville & Nashville Railroad Company by the city of Louisville is not merely a private property right, but is a public right, and is the exercise of governmental powers pertaining to sovereignty, the maxim, *nullum tempus occurrit regi*, is not applicable. This maxim is applied only to the sovereign or government that has enacted the limitation act. If foreign nations, subjects or citizens thereof, or municipalities deriving their power from a country other than that which has the act of limitation, seek the tribunals of the latter country, they are not entitled to apply this maxim, and will not be excepted from the limitation, unless the act of limitation excepts them in terms. The states of this Union, as between each other, or as between them and the United States, are not excepted from acts of limitation as to bringing suits, by the application of this maxim.

The plaintiffs' claims, as set out in the petition, are barred by the statute, unless the act of June 16, 1890, has prevented the bar. If this action was one against the defendants individually for money had and received for their use, the act of June, 1890, would not, we think, prevent the running of the limitation. But we have seen that it is, in effect, a statutory action against the United States, indirectly to adjudicate and ascertain the amount due plaintiff. In this view, I am of the opinion the bar of the statute is lifted as to the claim covered by this act. It may be urged that the bar of the statute as to the time of presenting the appeal, under section 3226, is all that is lifted by this act; but the act should be liberally construed and applied to section 3227, as well as section 3226.

This act requires the claim of the board of sinking fund commissioners of the city of Louisville to be audited and adjusted; and the inquiry is, what is that claim? The act itself answers the inquiry, and describes it as being "for internal revenue taxes on dividends on shares of stock owned by said board for said city of Louisville in the Louisville & Nashville Railroad Company, to the extent that such taxes were deducted from any dividends due and payable to said board." Thus, to come within the description, plaintiffs' claim must be for taxes on dividends on shares of stock owned by plaintiff, and which were deducted from said dividends. The taxes paid by the Louisville & Nashville Railroad Company on its gross receipts, under section 103 of the act of June 30, 1864, are not, by any possible construction of this law, a tax on dividends owned by plaintiff, and from which the tax was deducted. The tax was upon all of the receipts of the railroad company, without regard to their source or use, and is in no sense a tax on a dividend on stock owned by plaintiffs. "Dividend" is defined by Webster thus: "A sum divided; a division; a part or share made by division; the percentage divided; applied in cases of the *pro rata* division of assets among cred-

itors, or profits among stockholders." A cash dividend in corporation law is, we think, a division made between stockholders by the legal authority in the corporation of a part of the assets of the corporation, usually out of its profits, by which the stockholders become, and the corporation ceases to be, the owner of so much of its assets thus divided. A stock dividend is unlike a cash dividend, in that the assets of the corporation are not divided, or the property therein changed, but the stock is increased and divided. and the separate holdings of the stockholders increased to the extent of the dividend declared. Neither is the surplus or profits of the Louisville & Nashville Railroad Company, which were undivided, a "dividend," within the meaning of this act of June 16, 1890. They were assets belonging to that company, and did not belong to the stockholders until made their separate property by a division made by the proper corporate authority in the shape of a dividend. This was not done; hence this surplus was not a dividend, nor was the tax on it a tax on a dividend. The allegation of the petition that this surplus or profits were undivided dividends does not make this surplus dividends, within the meaning of the act of 1890. Neither the gross receipts or the undivided profits of the Louisville & Nashville Railroad Company taxed, are within the description of claim of plaintiffs which was to be audited and adjusted under this act. If we were allowed to consider the reason why the act confined the plaintiffs' claim to dividends on stock out of which the taxes had been deducted, it might perhaps be found in the fact that these were the only taxes the city directly paid. The other taxes were assessed and paid by the Louisville & Nashville Railroad Company on its own property, and not upon property belonging to the city, as between it and the city. The taxes levied under section 122 of the act of June 30, 1864, was upon income. In the one instance it was upon the income of the city, and in the other upon the income of the railroad company from its profits which remained undivided. The reasoning of the court in *U. S. v. Railroad Co.*, 17 Wall. 324, recognizes this distinction; hence held the tax illegal in that case. But, whatever may have been the reason for thus confining plaintiffs' claim to one for taxes paid on dividends, we think the construction given the act by us is certainly correct.

The only remaining question is that of interest on the $9,494.72 from May 9, 1872. This sum has been refunded without interest, and plaintiffs claim they demanded it of the secretary and commissioner, and it was refused, in 1890. This claim must be considered as one against the United States, because, if it be regarded as one against the collector individually, it cannot be sustained at all. There is no allegation to take it out of the bar of the statute of limitation as a claim against the collector individually. The act of June, 1890, provides that the secretary of the treasury and commissioner of internal revenue are "to pass upon said claim, and render judgment thereon, in the same manner and with the same effect as if said claim had been presented and prosecuted within the time limited and fixed by law." All right of action against Buckner individually, if the plaintiffs ever had any, was abso-

lutely barred by the statute of limitation, and clearly these words do not restore the right. Congress may have authority to enact such a law, but this one is evidently intended to lift only the bar of the statute as to the United States. It would require clear and explicit language to make Buckner personally liable for a claim from which he was already freed by the bar of the statute of limitation. Indeed, Buckner would not be personally liable for these taxes, for another reason, and that is, there was no protest or objection made to his collection of them. The allegation is that these taxes were paid by the Louisville & Nashville Railroad Company without the knowledge or consent of the plaintiffs, but there is none that the railroad company protested or objected to their collection or payment. The question of interest, as a claim against the United States, is one not free from difficulty, and I have read with much pleasure and enlightenment the brief of the learned counsel upon this subject. It is, however, not in point to show that recognized writers upon international law declare that interest is demandable between nations, nor that the United States and other nations have demanded and received interest in certain cases of indemnity, and compensation for injuries done their subjects or citizens. The city of Louisville, as well as the state of Kentucky, is a part of the United States, and I presume the rule as to the payment of interest is the same between the United States and the city of Louisville as that between the United States and any citizen.

The rule is stated thus in *U. S.* v. *Bayard*, 127 U. S. 260, 8 Sup. Ct. Rep. 1156, viz.:

"The case, therefore, falls within the well-settled principle that the United States are not liable to pay interest on claims against them, in the absence of express statutory provision to that effect. It has been established as a general rule in the practice of the government that interest is not allowed on claims against it, whether such claims originate in contract or in tort; whether they arise in the ordinary business of administration, or under private acts of relief passed by congress on special application. The only recognized exceptions are where the government stipulates to pay interest, and where interest is given expressly by an act of congress, either by the name of interest, or by that of damages. * * * Not only is this the general principle and settled rule of the executive department of the government, but it has been the rule of the legislative department, because congress, though well knowing the rule observed at the treasury, and frequently invited to change it, has refused to pass any general law for the allowance and payment of interest on claims against the government."

See, also, *Tillson* v. *U. S.*, 100 U. S. 43; *Harvey* v. *U. S.*, 113 U. S. 243, 5 Sup. Ct. Rep. 465.

The inquiry is whether congress has by an act, either general or special, given or allowed interest on claims which may be allowed under section 3220. That section authorizes the commissioner of internal revenue, under such regulations as may be prescribed by the secretary of the treasury, to refund and pay back all taxes erroneously or illegally assessed or collected, and all penalties collected without authority, and also to repay any collector the full amount of such sums of money that may be recovered against him in any court for any internal taxes col-

lected by him, with the cost and expenses of suit, but is silent as to interest.    Section 989 provides that when a recovery is had against a collector or other officer of the revenue, for any official act done by him, or for any money paid to him, and by him paid into the treasury, in the performance of his official duty, and the court certifies that there was probable cause for the act done by the collector or other officer, no execution shall issue against such collector or other officer, but the amount so recovered shall, upon final judgment, be provided for and paid out of the proper appropriation from the treasury.    But the section is silent as to interest, either before or after judgment.    The permanent appropriation of 1874 is "to refund and pay back duties erroneously or illegally assessed or collected under the internal revenue laws."    Rev. St. p. 725, § 3689.    This section is silent as to interest on money refunded for taxes illegally or erroneously collected.    Section 1090 provides that "no interest shall be allowed on any claim up to the time of the rendition of judgment thereon by the court of claims, unless upon a contract expressly stipulating for the payment of interest."    This, of course, does not bind this court, but it does show a general legislative intent not to allow interest on claims, in the absence of an express contract to do so, or an express provision of a statute.

The supreme court has decided, in considering the effect of a certificate of probable cause, under section 989, that such a certificate practically converts the claim into a claim against the government, "but not until then."    U. S. v. Sherman, 98 U. S. 567.    The court was construing section 989, but this does not apply to section 3220, as to the necessity for such a certificate.    The court, in a subsequent case, decided that the commissioner of internal revenue might, under section 3220, pay a judgment rendered against a collector directly to the plaintiff, who recovered the judgment against him, and that, too, when the trial court had refused a certificate of probable cause.    U. S. v. Frerichs, 124 U. S. 315, 8 Sup. Ct. Rep. 514.

The counsel refer us to several decisions which they claim sustain plaintiff's right to interest.    These will be briefly considered.    The cases of Durand v. Lawrence and Rheimer v. Maxwell, 2 Blatchf. 399, and 3 Blatchf. 124, were customs duties, and they were decided in 1852 and 1853.    In both cases the importers protested.    The case of White v. Arthur, 10 Fed. Rep. 81, was also a customs duty case, and the question was whether the judgment for customs duties which had been illegally exacted should bear interest after rendition until paid.    The United States had paid the amount of the judgment, but declined to pay interest from the rendition of the judgment until payment, although there had been a certificate of probable cause given by the court at the time of the judgment.    The court decided the United States was not bound to pay the interest on the judgment, and ordered a satisfaction of the judgment to be entered upon the motion of the United States.    I do not understand that the court intimated an opinion that taxes illegally collected bore interest from the time of their exaction.    The case of U. S. v. McKee, 91 U. S. 442, was a revolutionary claim, and the question

was as to the proper construction of a special act of congress allowing the claim. The claim was referred to the court of claims—

"With full jurisdiction to adjust and settle the same, and, in making such adjustment and settlement, the said court shall be governed by the rules and regulations heretofore adopted by the United States in the settlement of like cases, giving proper consideration to official acts, if any have heretofore been had in connection with this claim, and without regard to the statute of limitation."

The court of claims allowed interest, and the supreme court affirmed the decision. The court says:

"The fifth section of the act of August 5, 1790, already referred to, directed the commissioners, who under that act were to settle the claims of the states against the general government, to allow interest, and, but for the bar of time in that act, this case would have come under that statute. The act under which the court of claims took jurisdiction of this case directed it to be 'governed by the rules and regulations heretofore adopted by the United States in the settlement of like cases.' The is a like case to those in which interest was to be allowed by the act of 1790."

We think there is nothing in that case which throws any light on the question of interest in this case. The case of *Bartels* v. *Redfield*, 23 Blatchf. 486, 27 Fed. Rep. 286, also reported in 16 Fed. Rep. 336, was where a judgment in the nature of special verdict was by consent entered for interest on taxes (customs) illegally exacted, and the effort was made many years thereafter to set it aside. This motion rather indicates that, but for the consent order, no interest would be allowed, though the court did not consider that question. The supreme court, however, in a similar case against Redfield, refused to allow interest on a special verdict of like kind, because there had been a delay of many years in bringing the case to final judgment. *Redfield* v. *Iron Co.*, 110 U. S. 174, 3 Sup. Ct. Rep. 570.

The case of *Erskine* v. *Van Arsdale*, 15 Wall. 75, is important, and, as far as it decides, is very much in point. There the lower court instructed the jury that—

"If the collecting officer had notice, at the time of payment, from the taxed person, that the tax was illegal, and that he would take measures to recover it back, the action may be maintained for all the taxes paid; and that if they found for plaintiff they might add interest."

Both instructions were sustained by the supreme court. Chief Justice CHASE, delivering the opinion, said:.

"Taxes illegally assessed and paid may always be recovered back if the collector understands from the payer that the taxes are regarded as illegal, and that suit will be instituted for the refunding them.   *   *   *   The ground for the refusal to allow interest is the presumption that the government is always ready and willing to pay its ordinary debts. When an illegal tax has been collected, the citizen who has paid it, and has been obliged to bring suit against the collector, is, we think, entitled to interest in the event of recovery from the time of the illegal exaction."

The court had previously decided that a person who voluntarily paid illegal taxes could not recover them from the collector, but that if he paid such taxes under protest, or at the time of payment gave notice to the col-

lector that he intended to bring suit against him to test the validity of the tax, he could maintain an action of *assumpsit* against the collector. *Philadelphia* v. *Collector*, 5 Wall. 732. The court, however, explained in *Collector* v. *Hubbard*, 12 Wall. 12, that this action of *assumpsit* was not a common-law action based upon an implied promise of the collector, because, if that was the fact, a good defense to it would be that the law required the taxes to be paid into the treasury of the United States, and that he had paid them over in obedience to the law, but said this action, in form *assumpsit*, was really a statutory remedy against the collector, to ascertain and determine the liability of the United States. We understand the present law not to require a protest at the time of payment, but an appeal to the commissioner of internal revenue will be sufficient. We, however, think that, if the United States is liable for interest at all, it can only be from the time of a protest, if one is made, or from the refusal to refund, after the appeal to the commissioner under section 3220. Any other rule would be unjust. If the taxes are voluntarily paid, the United States is not in default in the repayment until a demand or protest. In the case at bar, the United States would not, in the absence of a statute of limitation, be in default as to the refunding of these taxes until a demand was made upon it to refund. Neither the United States nor its collector, Buckner, could be presumed to have known these taxes were illegally collected. The illegality depended upon the fact that the city of Louisville was a stockholder, and to that extent only was it illegal. The assessment and payment were both *prima facie* regular and legal, and, as far as this record shows, the United States has never been in default as to the refunding of these taxes. In the case of *Bailey* v. *Railroad Co.*, 22 Wall. 604, and 106 U. S. 109, 1 Sup. Ct. Rep. 62, the taxes were paid under protest, and after the railroad company's property had been taken under distress warrants. In that case interest was allowed from the time of payment. See *In re New York C. & H. R. R. Co.*, 6 Lawr. Dec. 137. I cannot find that the question of interest was considered by the court, though Judge Lawrence, then comptroller, seems subsequently to have protested vigorously against it when it was too late to make the question.

If we are correct in our view of the law, the only possible claim for interest must be based upon the act of 1890. That act must not only have lifted the statute of limitation, but have conferred the right to interest from the time of the collection from the railroad company, or from two years after this collection. The language of this act is "to pass upon said claim, and render judgment thereon, in the same manner and with the same effect as if said claim had been presented and prosecuted within the time limited and fixed by law." The claim as described was for the taxes illegally collected, and the interest was an incident to the claim, if allowed. It would be compensation given for the use of the money— taxes—withheld, or in the nature of damage for the delay in refunding it. But, considered as a claim, there was none at the time of the passage of the law, because the necessary steps had not been taken. Congress must therefore have intended merely to lift the bar of the statute

of limitations, and allow the claim as described in the act to be passed upon with the same effect as if it had been presented within the time limited; or not only to do this, but, in addition, to give plaintiffs the right to interest, which they did not then have, and could not have recovered, if there had been no bar of the statute of limitation. It seems to me the proper construction of the act is that congress only intended to prevent the running of the statute of limitation by allowing the claim to be considered and passed upon with the same effect as if there was no such statute, and did not intend to increase plaintiffs' existing rights by giving a demand made in 1890 the same effect, as to interest, as if it had been made in 1872. I am inclined to the opinion that the law, as announced in *Erskine* v. *Van Arsdale,* 15 Wall. 75, has been somewhat modified, as to interest on taxes illegally collected, by the later cases. See *U. S.* v. *Bayard,* 127 U. S. 260, 8 Sup. Ct. Rep. 1156; *Stuart* v. *Barnes,* 43 Fed. Rep. 281. But, assuming the law as laid down by Chief Justice CHASE is unmodified, the plaintiffs cannot recover interest in this case, because they have not taken the necessary steps to entitle them to it, and the act of June, 1890, has not given it to them. We conclude, therefore, that defendants' demurrer must be sustained to the entire claim and petition, and it is so ordered.