### UNITED STATES v. BARBER.

#### (Circuit Court of Appeals, Fifth Circuit. May 26, 1896.)

#### No. 443.

JUDGMENTS AGAINST THE UNITED STATES—INTEREST—ACT OF MARCH 3, 1887.

Section 10 of the act of congress of March 3, 1887, relating to the bringing of suits against the United States, and conferring jurisdiction thereof upon the circuit and district courts, does not repeal or modify the provisions of Rev. St. §§ 1090, 1091, relative to interest on judgments of the court of claims, nor authorize the recovery of interest on such judgments from the time of their rendition until an appropriation is made for their payment.

In Error to the District Court of the United States for the Northern Division of the Northern District of Alabama.

Geo. A. King and Jere Murphy, Jr., for defendant in error.

Emmett O'Neal and F. B. Earhart, for the United States.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge.

SPEER, District Judge. Robert Barber instituted a suit against the United States in the district court for the Northern district of Alabama, under the provisions of the act of congress of March 3, 1887, entitled "An act to provide for the bringing of suits against the government of the United States." The amount of his demand was $18.45. It appears from the petition filed that on the 24th day of May, 1887, he obtained in the court of claims a judgment against the United States for the sum of $540. On the 11th of June, 1887, he presented to the secretary of the treasury of the United States a properly certified transcript of the judgment, and requested payment. There being no appropriation applicable for that purpose, payment was delayed until the 30th of March, 1888, when an act of congress provided for "certain of the most urgent deficiencies in the appropriations for the service of the government for the fiscal year ending June 30, 1886." Among other appropri-

ations, the following was made: "For payment of the judgment of the court of claims, as follows: * * * Robert Barber, $540." Thereafter the principal sum due on the judgment was paid by a treasury draft, which the plaintiff states he accepted in full payment of the principal only. The amount of $18.45 having accrued as interest from the date of the judgment to the date of the appropriation, the plaintiff now sues to recover that sum. He relies upon a clause of section 10 of the act of congress of March 3, 1887, which reads as follows: "From the date of such final judgment or decree interest shall be computed thereon at the rate of four per centum per annum until the time when an appropriation shall be made for the payment of the judgment or decree." The plaintiff insists that this language applies as well to the judgments rendered by the court of claims as to the judgments obtained in the circuit and the district courts, in the exercise of the jurisdiction conferred upon those courts by the act of congress in which it is found.

The United States appeared by Emmett O'Neal, United States attorney for the Northern district of Alabama, and filed a motion to dismiss the petition upon the following grounds: First. The act of congress in question authorized interest only on the judgments of the circuit and district courts, and that interest on judgments of the court of claims, except in cases where an appeal is taken by the United States, is not authorized. Second. Having accepted the principal on the judgment rendered by the court of claims, the plaintiff cannot now recover interest in a separate action. The same grounds of defense were presented by a demurrer. After hearing argument, the district court made the following order:

"This case, coming on for hearing, was submitted upon brief for decision by the court, and, on consideration thereof, the court finds for the plaintiff on the issues joined. It is therefore considered by the court that the plaintiff, Robert Barber, have and recover from the United States, the defendant herein, the sum of $18.45."

To this judgment the United States excepted, and assigned the same as error.

Notwithstanding the small amount involved in this case, it is evident from the record, and from the carefully prepared briefs and arguments of counsel, that its determination is of much consequence. This determination must depend upon the construction given to the act of congress of March 3, 1887, which, under the conditions therein mentioned, opens the circuit and district courts of the United States to suits of a certain class against the government. The liability of the government to pay interest exists only where it is authorized by express legislation. In the case of U. S. v. Bayard, 127 U. S. 251–261, 8 Sup. Ct. 1156, Mr. Justice Blatchford, for the court, declares:

"The case, therefore, falls within the well-settled principle that the United States are not liable to pay interest on claims against them, in the absence of express statutory provisions to that effect. It has been established, as a general rule, in the practice of the government, that interest is not allowed on

claims against it, whether such claims originate in contract or in tort, or whether they arise in the ordinary business of administration, or under private acts of relief, passed by congress on special application. The only recognized exceptions are where the government stipulates to pay interest, and where interest is given expressly by act of congress, either by the name of interest, or by that of damages."

After pointing out that this principle has been regarded as controlling by the attorney general, the treasury, and the legislative department, where congress has refused to pass any general law for the allowance and payment of interest on claims against the government, the learned justice continues as follows:

"The principle above stated is recognized by this court. In Tillson v. U. S., 100 U. S. 43–47, this court, speaking of the rule that interest is recoverable between citizens if a payment of the money is unreasonably delayed, says that with the government the rule is different, and that the practice has long prevailed in the departments of not allowing interest on claims presented except it is in some way specially provided for. See, also, Gordon v. U. S., 7 Wall. 188; Harvey v. U. S., 113 U. S. 243–249, 5 Sup. Ct. 465." Subsequent to the decision of U. S. v. Bayard, 127 U. S. 251, 8 Sup. Ct. 1156, the supreme court passed on the case of Morley v. Railroad Co., 146 U. S. 162–179, 13 Sup. Ct. 54. There Mr. Justice Shiras, for the court, pointed out the distinction between interest when provided for in a contract, and when resulting from the operation of law. The legislature of New York had reduced the rate of interest; and, the court of appeals of that state having held that a judgment obtained before the passage of the act of the legislature was subject to the operation of the act, error was assigned to the supreme court of the United States, upon the ground that the legislation in question impaired the obligation of the contract. That court held, however, that the judgment creditor had no contract with his debtor which forbade the state from legislating, within its discretion, to reduce the rate of interest upon judgments previously obtained in its courts, and interest until payment, not expressly provided for by contract, is treated as statutory damages for the delay. 'Should,' said Justice Shiras, 'the statutory damages for nonpayment of a judgment be determined by a state either in whole or in part, the owner of the judgment will be entitled to receive, and have a vested right in, the damages which shall have accrued up to the date of the legislative change; but after that time his rights as to interest as damages are, as when he first obtained his judgment, just what the legislature chooses to declare. He has no contract whatever on the subject with the defendant in the judgment, and his right is to receive, and the defendant's obligation is to pay, as damages, just what the state chooses to prescribe.' "

Indeed, it is true that the right to recover interest did not exist at common law (11 Am. & Eng. Enc. Law, p. 379); and in this country it has been held to be entirely a creature of the statute, only allowed where so authorized. It has been held by the supreme court of Mississippi that, even where there is a general statute on the subject of interest, it does not apply to claims against a county authorized by a special statute, which makes no provision for interest. Board of Sup'rs v. Klein, 51 Miss. 807; Board of Sup'rs Clay Co. v. Board of Sup'rs Chickasaw Co., 64 Miss. 534, 1 South. 753. See, also, Railroad Co. v. Cobb, 72 Ill. 152; Chicago v. Allcock, 86 Ill. 385; and Commissioners v. Dunlevy, 91 Ill. 54. It will be seen, therefore, that at common law, in the jurisprudence of the states, and of the United States, it has been settled that the right to interest must exist, if at all, by contract, or by express statutory enactment. In this case, since there was no contractual liability, the inquiry follows logically, has congress, in the act relied upon, or elsewhere, au-

thorized the collection of interest on the judgments rendered by the court of claims?

Section 1090, Rev. St., relating to the judgment of that court, provides:

"In cases where the judgment appealed from is in favor of the claimant, and the same is affirmed by the supreme court, interest thereon at the rate of five per centum per annum shall be allowed thereon from the date of its presentation to the secretary of the treasury as aforesaid, but no interest shall be allowed subsequent to the affirmance, unless presented for payment to the secretary of the treasury as aforesaid."

Section 1091 provides that "no interest shall be allowed on any claim up to the time of the rendition of the judgment thereon by the court of claims, unless upon a contract expressly stipulating for the payment of interest."

These statutes, it will be observed, were expressive of the policy of the government not to pay interest on judgments of that court, save under the exceptional cases mentioned. There was no appeal here, and, as we have seen, no contract expressly stipulating for the payment of interest.

The defendant in error insists, however, that his right to interest is found in the act of March 3, 1887. He points out that its first section revises the jurisdiction of the court of claims, and its second section confers jurisdiction, within certain limits, as to the amount sued for, upon the district and circuit courts. Some of the remaining provisions of the act relate specially to the court of claims, some to the district and circuit courts, while others are general in their operation. Section 10 provides, as before stated, that "from the date of said final judgment or decree, interest shall be computed thereon at the rate of four per centum per annum until the time when an appropriation is made for the payment of the judgment or decree." He draws the inference that there is nothing which limits the language thus quoted to the payment of interest on judgments of the district and circuit courts. Seeking to apply the familiar rule of 1 Bl. Comm. 87: "There are three points to be considered in the construction of all remedial statutes,—the old law, the mischief, and the remedy," he argues that the old law the national legislature sought to reform occasioned the difficulty in the collection of interest, the mischief was that difficulty, and the consequent delay, and the remedy is now afforded by the provision of section 10 of the act of 1887, making the government liable for interest on the final judgment or decree at the rate of 4 per centum per annum, until the proper appropriation is made, with the coercive effect to compel prompt appropriation by congress. If these premises of the learned counsel were accepted by the court as accurate, we would have less trouble in the application to this case of the well-known rule of construction afforded by the luminous and scholarly Blackstone. The title of the act of March 3, 1887, and the phraseology of the act itself, do not seem to import that the national legislature had in mind that special mischief of the old law which has been impressed on counsel for the defendant in error. It is entitled "An act to provide for the bringing of suits against the government of the United States." The

mischief which congress was seeking to redress existed principally, we think, in the fact that the court of claims was remote from the multitude of the people having causes of action against the government, and was, therefore, difficult of access; that these conditions were virtually prohibitory of suits, unless the amounts involved were large enough to justify a heavy outlay on the part of suitors. The remedy consisted in the opportunity the act permitted to bring suit to the amount of $10,000 in the circuit courts, and to the amount of $1,000 in the district courts, which are courts convenient to the people of the several states. Since this was the primary object of the legislation, the court will not make haste to seize upon a clause which may not impinge upon statutes expressing the settled policy of the government not to pay interest on claims against it, save in exceptional cases, and, by construction, impose a policy altogether different. This is especially true in view of the fact that, if congress had entertained the intention to repeal sections 1090 and 1091 of the Revised Statutes, it would have done so in express language, as it did in this act repeal section 1079. Moreover, an obvious construction of section 10 of the act of March 3, 1887, in connection with other cognate and essential sections of the same act, will plainly indicate that the contention of the defendant in error is untenable. Section 6 provides a method for suits in the circuit and district courts, and that copies of the petition shall be served upon the district attorney of the United States in the district wherein the suit is brought. It prescribes what shall be the duty of the district attorney with reference to said suit, and what the courts of the several districts may do in case the district attorney fails to make the proper defense. These provisions, manifestly, have no relation to the court of claims, for the district attorney and the courts of the several districts, it is needless to say, have nothing to do with that court. Section 7 provides that the court shall cause a written opinion to be filed in the case, setting out the specific findings by the court, and its conclusions upon the questions of law involved in the case, and shall render judgment thereon. If the suit be in equity or admiralty, the court shall proceed in the same way, according to the rules of said court. This language manifestly relates to the circuit and district courts, both which have jurisdiction in equity, and one in admiralty. Now section 10 provides:

"That, when the findings of fact and law applicable thereto have been filed in any case as provided in section 6 of this act [the word 'six' having been inserted by error where 'seven' should have been used], and the judgment or decree is adverse to the government, it shall be the duty of the district attorney to transmit to the attorney general of the United States certified copies of all the papers filed in the cause, with a transcript of the testimony taken, the written findings of the court, and his written opinion as to the same."

Since the district attorney is the counsel for the government in the circuit and district courts, and not in the court of claims, where the government is represented directly by the attorney general and his assistants, this language must necessarily be construed to refer to the circuit and the district courts. Then the language relied upon by defendant in error follows:

"From the date of such final judgment or decree, interest shall be computed thereon, at the rate of four per centum per annum, until the time when the appropriation is made for the payment of the judgment or decree."

We think it is clear that the term "such final judgment or decree," as used in the proviso just quoted, relates to the judgment or decree of the district or circuit courts concerning which the district attorney is intrusted with specific duties in other portions of the sections, and the district and circuit courts with other duties, and not the judgment or decree of the court of claims, with which he has no concern whatever, and which has no general jurisdiction in equity or admiralty. We are strengthened in this construction of the proviso in section 10 of the act of March 3, 1887, from the fact that, since the passage of the act, congress, at every session, has made special appropriations, according to the provisions of section 1090 of the Revised Statutes, for judgments of the court of claims; and, in the deficiency appropriation of 1890, it enacted as follows:

"And on judgments in favor of claimants which have been appealed by the United States and affirmed by the supreme court of the United States, interest at the rate of four per cent. per annum shall be allowed and paid from the date of the filing of the transcript of judgment in the treasury department up to and including the date of the mandate of affirmance by the supreme court; provided that in no case shall interest be allowed after the term of the supreme court at which said judgment was affirmed." 26 Stat. 537.

This legislation affords a sufficient reply to the argument of the learned counsel for the defendant in error that section 1090 of the Revised Statutes was repealed by the act of March 3, 1887. It is evident, by this provision, that congress intended to make the rate of interest on judgments of the court of claims the same as that provided on judgments of the circuit and district courts, but carefully reiterated the policy that it should be payable only on judgments appealed to and affirmed by the supreme court, and as carefully denied interest, even on such judgments, which might accrue after the term at which the judgment was affirmed. It appears plainly from the terms of the act itself, and by this subsequent legislation, that interest is only allowable on the judgments which may be obtained in the circuit and district courts. Congress might very well consent to allow interest on these comparatively small claims, and yet refuse to disturb the policy of the government—which does not allow interest on the claims, sometimes amounting to millions, which may be recovered in the court of claims. This is the construction given by the executive department; and in Brown v. U. S., 113 U. S. 570, 5 Sup. Ct. 648, citing Edwards v. Darby, 12 Wheat. 206, in the construction of a doubtful and ambiguous law, the contemporaneous construction of those who are called upon to act under the law, and were appointed to carry this provision into effect, is entitled to great respect. See, also, Atkins v. Disintegrating Co., 18 Wall. 272–301; Smythe v. Fiske, 23 Wall. 374; U. S. v. Moore, 95 U. S. 760–763. In the latter case the court observed that the construction given to the statute by those charged with the duty of executing it ought not to be overruled without cogent reasons. The officers are generally able men, and masters of the subject. Not in-

frequently they are the draftsmen of the law, and are called upon to enforce it.  Moreover, in the case of U. S. v. Jones, 131 U. S. 18, 9 Sup. Ct. 669, a case depending upon the act of March 3, 1887, but not involving this precise question, Justice Bradley remarked, regarding Rev. St. §§ 1089 and 1090:  "These sections are still the law on the subject to which they relate, being necessary to the completion of the system, and not being supplied by any other enactment. Indeed, they are expressly retained."  Since these sections provide the conditions on which interest may be paid on judgments in the court of claims, the learned justice, in the language used on the same pages, cannot, we think, be properly understood to be of opinion that the provisions in section 10 of the act of March 3, 1887, apply to interest on judgments obtained in that court.  The views being decisive, we do not advert to other questions discussed in the valuable brief of the district attorney.

We are satisfied that the judgment of the district court was erroneous, and it is ordered reversed.