Howey, J.,
delivered the opinion of the court:
The question presented for determination in this case is of much general interest and importance not only because of the effect of its final decision upon litigants and judgment creditors in this court, but also because of the conflicting views existing with'respect to the true construction of an act relating to the jurisdiction of the courts invested with power to hear and determine claims against the Government.
*48 Is interest recoverable upon a judgment or decree of this court where the judgment or decree is of the same character as that rendered for plaintiff, and from which no appeal has been taken and the same made final ¶
Some additional importance has attached to the question pending the determination of the matter here because of the conflicting views of other courts on the same subject, the District Court of the United States for the northern district of Alabama having decided that interest is recoverable on judgments of this court, while the Circuit Court of Appeals for the fifth circuit has taken the opposite view, and decided that such interest cau not be recovered.
The Pacific Coast Steamship Company, a corporation having its principal place of business at San Francisco, in the State of California, brought suit in this court under the provisions of the statute, for certain services performed at the request and on behalf of the United States, and on the 1st day of April, 1889, obtained final judgment therein for $14,800.92. A duly certified transcript of this judgment was presented to the Secretary of the Treasury for payment within four days after said judgment; but no appropriation being then available payment was refused. Subsequently, under an act approved September 30,1890, entitled “An act making appropriations for the fiscal year ending June 30,1890, and for prior years and other purposes,” Congress provided, among other things—
“That the following sums be, and the same are hereby, appropriated out of any money in the Treasury not otherwise appropriated, to supply deficiencies in the appropriations for the fiscal year eighteen hundred and ninety, and for prior years,arul for other objects hereinafter stated, namely * * * For payment of judgments of the Court of Claims. * *• * To the Pacific Coast Steamship Company, fourteen thousand eight hundred dollars and ninety-two cents ($14,800.92): * * * Provided, That none of the judgments provided for shall be paid until the right of appeal shall have expired.”
The principal of the judgment was paid under the appropriation, the plaintiff corporation alleging that the amount was received and accepted in full of the principal only.
The right to claim interest is based, first, upon the liquidated character of the judgment out of which grew interest for the time of the nonpayment of the principal, and secondly, upon the tenth section of the act of March 3, 1887, entitled “An act to provide for the bringing of suits against the Government of the United States.” (1 Supp. Rev. Stat., 559.)
*49 In behalf of the Government it is claimed that the tenth section of the act relied upon by the petitioner applies only to judgments in the circuit and district courts of the United States for the ’limited sums those courts are authorized to render judgment for, and can not be held to apply to judgments obtained in this court against the United States; and nest, that no other authority growing either out of contract or statute can be shown to sustain the demand.
As a right in the nature of property, or as a premium or profit for the use of money, interest was not allowed at common law. Contracts for the payment of interest as an accessory or incident to principal were treated as usurious and punishable as usury. In this country the payment of interest became sanctioned by statute for contracts, express or implied, or by way of damages, either for a default in the payment of a debt or for a use or benefit derived from the money of another. Where such has been the usage of trade or the course of dealing between the parties, or the special custom of one party, known and acceded to by the other, the law will imply a contract. (Williams v. Craig, 1 Dall., R., 313; Meech v. Smith, 7 Wend., 315; Ayers v. Metcalf, 39 Ills., 307; Selleck v. French, 1 Conn., 32.)
Judgments and decrees bear interest from their date, but the statute is the foundation of the right.
Interest, therefore, as a rule, is the creature of the statute. The courts have announced this proposition so often, and text writers have so generally accepted the same as correct, it may now be said to be axiomatic that unless the warrant for the payment of interest be found -in the statute interest can not be collected. The principle is well settled that the United States are not liable to pay interest on claims against them in the absence of statutory direction. This is so whether such claims originate in contract or in tort, or whether they arise in the ordinary course of business with the Government, or under legislation making appropriations for specific relief. The only recognized exceptions are where the Government stipulates to pay interest and where it is expressly given by an act of Congress, either by the name of interest or by that of damages. The practice has long prevailed in the Departments of not allowing interest on claims presented, liquidated or unliqui-dated, except in some way specially provided for. The Supreme Court adopted this rule from a succession of the opinions of *50 the Attorneys-General of the United States in a well-considered case on the subject, from which we know of no settled departure. (Angarica v. Bayard, 127 U. S. R., 251; see also Gordon v. United States, 7 Wall., 188, and Harvey v. United States, 113 U. S. R., 243, 249; United States v. New York, 160 U. S. R., 619.)
That interest has been allowed in some cases where the claim has become liquidated.is true. (United States v. McKee, 91 U. S. R., 442, 450, 451; Erskine v. Van Arsdale, 15 Wall., 75; The Neustra Senora de Regla, 108 U. S. R., 92, 107.) But the opinion in the first case was by a divided court, where interest was allowed on a bill of exchange, and where the claim had been referred to this court under an act directing’ the examination of the claim to be governed by the same rules and regulations adopted by the Government before that time in the settlement of like cases. While Mr. Justice Miller, for the majority, adverted to the fact that the rule for the payment of interest in adjusting and allowing unliquidated and disputed claims against the Government was not uniform, yet he expressly declared the case to be like those in which interest was to be allowed by the previous direction of Congress. In the second case cited, where an illegal tax had been collected and the .citizen who had paid it had been obliged to bring suit against the collector, the court decreed that such person was entitled to interest in the event of recovery from the time of the illegal exaction. In the last case mentioned the court allowed interest against the Government on account of default in complying with an order of restitution to the time of the decree in the case of the Spanish boat- Neustra Señora de Eegla, declared by the court not to be lawful prize and captured without probable cause. If there be other authorities to sustain the proposition implied from the language used in any of these cases that undisputed and liquidated claims are entitled to interest, our attention has not been called to them.
The cases cited, however, do not establish the rule, but rather exceptions to the rule, declared by the decisions in Angarica v. Bayard and Harvey v. United States (supra), and recently emphasized by the unequivocal language that interest can not be collected from the Government in- the absence of language specially providing for its payment, and that the claim for interest must be clear and beyond question. (District of Columbia v. Johnson, 165 U. S. R., 330, and United States v. Verdier, 164 U. S. R., 213.)
*51 It is not shown, or attempted to be shown, that the contract upon which the original judgment for the plaintiff was based stipulated for tbe payment of interest. The claim not being one of contract stipulating for interest in the outset, the court could not and did not allow interest under the act of March 3, 1863 (sec. 1091, Rev. Stat.), when the judgment was rendered. The demand became liquidated by the judgment, it is true, but there was nothing in the change from its former status as a claim that entitled the creditor to interest unless some specific provision of the general statute authorized it. The judgment itself did not become a contract for interest-bearing purposes, because the most important elements of contract were wanting. The defendants had not voluntarily assented or promised to pay, and in this respect the case resembled that of Morley v. Lake Shore Railroad Co., where the duty to pay interest on a judgment was declared to be no more within the scope of the obligation of the defendant than before (146 U. S. R., 162).
Nor does the case here come within that provision of law relating to judgments of this court appealed from by the United States. Section 1090 of the Revised Statutes provides:
“In cases where the judgment appealed from is in favor of the claimant, and the same is affirmed by the Supreme Court, interest thereon at the rate of five per centum per annum shall be allowed thereon from the date of its presentation to the Secretary of the Treasury as aforesaid, but no interest shall be allowed subsequent to the affirmance, unless presented for payment to the Secretary of the Treasury as aforesaid.”
When rendered, the judgment for the plaintiff was acquiesced in and paid as soon as appropriated for.
Has the act of March 3, 1887, changed the policy of the Government with respect to the payment of interest on the judgments of this court? It is contended for the plaintiff that interest should be paid from the time the judgment was rendered till the date when an appropriation was made for its payment; that this is evidenced by the language of the act itself; by the provision of the act of September 30,1890, reducing the rate of interest on appealed judgments from 5 per cent to 4 per cent, so as to make it concurrent with the general provision of the act of 1887; by the opinions of individual members of distinction expressed in debates in Congress, and by repeated decisions of the Supreme Court, several of them *52 based upon the act of 1887, and one upon section 10 of that act, in which the point of view of the court throughout-was that of assimilating, or, so far as possible, identifying the practice and rule of decision prevailing in the district and circuit courts of the United States under the act in question with those of the Court of Claims.
The act of 1887, commonly called the Tucker Act, reenacted' the jurisdiction of this court and conferred concurrent jurisdiction upon the District Courts of the United States to hear and determine all matters named in the first section of the act where the amount of the claim should not exceed $1,000, and upon the Circuit Courts likewise to hear and determine all cases where the amount of the claim should exceed $1,000 and not exceed $10,000. All cases brought in either of tlie said courts were to be tried without a jury. It may be observed here that in addition to the act of 1887, reenacting the general jurisdiction of this court, numerous other acts of Congress existed then and have been enacted since referring particular cases or groups of cases to the Court of Claims for adjudication. Some of these relate to cases and classes of claims public and general in their nature, while many others cover private or special cases and claims. Among those acts of special importance (and excluding those providing for the reference of claims or matters by a House or committee of Congress and by heads of departments for findings of fact or conclusions of law) may be mentioned the act of January 20, 1885, providing for the determination of the validity and amount of French spoliation claims; the act of March 3,1875, permitting certain land-grant railroads to bring suit in this court; the act of June 16, 1880, conferring jurisdiction over all pending claims against the District of Columbia arising out of contracts for improvements, and the act of March 3, 1891, providing for the adjudication of Indian depredation claims. It is significant of the purpose and intent of Congress that except in those instances of contract by executive officers of the Covernment duly authorized the payment of interest or the award of damages in lieu of interest was excluded by these statutes. It is equally significant of the policy of Congress, after the act of 1887 as well as before, that appropriations for the payment of judgments of this court on claims referred under the statutes mentioned, as under all others, covered the amount of each judgment as rendered and excluded interest except in *53 those cases where appeals ha,d been taken by the United States and the judgments affirmed, or in cases of contracts where interest was authorized.
Deference to the act of 1887 shows that some of its provisions specially apply to this court, while other provisions relate exclusively to suits brought in the District and Circuit courts. It is also manifest that some of the sections of the law apply to all of the courts invested with jurisdiction to hear claims for the amounts mentioned in each jurisdiction. It may be conceded, without disturbing the conclusion we have reached in this case, that certain provisions of the act in question are ambiguous, and some uncertainty exists as to whether they apply to all the courts or to some of them.
Section 6 provides for the service of the petition filed under the preceding section upon the district attorney in the district wherein suit is brought and for notice in these cases to the Attorney-General by registered mail, and prescribes the duty of the district attorney with reference to suits in the Circuit and District courts and the duty of the courts of the several districts where the district attorney fails to make the proper defense. Inasmuch as district attorneys are the officers in charge of the business of the United States in the courts mentioned in section 6, and have no functions to perform in tliis court, it is clear that the provisions of this section do not relate to the business of the Court of Claims.
Section 7 provides that it shall be the duty of the court to cause a written opinion to be filed in the cause, setting forth the specific findings by the court of the facts therein and the conclusions of the court upon all questions of law involved in the case, and to render judgment thereon. If the suit be in equity or admiralty, the court shall proceed with the same according to the rule of such courts. Inasmuch as the Circuit and District courts have jurisdiction in equity and one of them in admiralty, it is clear that section 7 must apply to those courts exclusively.
Section 8 in express terms repeals section 1079 of the Revised Statutes and extends the provisions of section 1080 to all cases under the act. Thus it will be seen that section 1080, which before the act of 1887 related. exclusively to this court, was extended to cover all cases within the new jurisdiction.
In several of its sections the act has been construed by the Supreme Court. In one case it was held that the fourth and *54 ninth sections were applicable to all the courts taking jurisdiction. (Jones v. United States, 131 U. S. R., 1.) In United States v. Davis (131 U. S. R., 30) the period of ninety days provided by section 708 of the Revised Statutes for appeals to be taken was held to be enlarged to six months by section 10 of the act in question. . In United States v. New York (160 U. S. R., 612) Mr. Justice Harlan, for the court, declared it was “ difficult to tell what was intended” by certain words of the twelfth section, but held that “ section 1063 of the Revised Statutes, the second section of the Bowman Act, and the twelfth section of the Tucker Act may be regarded as parts of one general system covering different states of case and standing together without conflict in any essential particular.” It is argued from the first two cases mentioned that because the fourth and ninth sections of the Tucker Act were held to be applicable to this court as well as to the Circuit and District courts the tenth section is equally applicable here, and that in any event the Davis Case is a direct decision in favor of the equal application of the tenth section throughout to the proceedings and judgments of all the courts taking jurisdiction alike. We can not adopt, these views.
In the first case cited the question was, whether the jurisdiction conferred by the first and second sections gave to the Circuit and District courts or to this court jurisdiction in equity to compel the issue and delivery of a patent for public) land as a matter of specific performance embraced by the act within the equitable jurisdiction conferred, and it was held that these sections did not. It is significant that the court took the occasion to say that sections 1089 and 1090 of the Revised Statutes were, still in force and “ still the law on the subjects to which they relate, being necessary to the completion of the system, and not being supplied by any other enactments.” The question in the Davis Case arose on a motion to dismiss an appeal taken by the Government from a judgment rendered by a District Court, under the act of 1887, in favor of a claimant, the judgment being for the sum of $25. The question was, whether under section 9 the right, of appeal given by the act from the judgments of a District Court was to be the same as that which previously existed in relation to cases between pi'ivate parties in the District Court or the same right of appeal which had theretofore existed from the judgments of the Court of Claims. In holding that the latter was *55 the true construction the court declared that the period of ninety days (within which, by section 708 of the Revised Statutes, appeals must be taken from the Court of Claims to the Supreme Court) was enlarged to six months by section 10 for judgments of the District Courts.
There being nothing to indicate that section 708 of the lievised Statutes was superseded by the proviso to section 10 with respect to the judgments of this court, appeals from our judgments must still be governed by that section of the law antedating the Tucker Act, and consequently, unless appeals are taken in ninety days under such regulations as section 708 prescribes, they can not be taken at all.
Section 10 provides:
“That when the findings of fact and the law applicable thereto have been filed in any case as provided in section six of this act, and the judgment or decree is adverse to the Government, it shall be the duty of the district attorney to transmit to the Attorney-General of the United States certified copies of all the papers filed in the cause, with a transcript of the testimony taken, the written findings of the court, and his written opinion as to the same; whereupon the Attorney-General shall determine and direct rvhether an appeal or writ of error shall be taken or not; and when so directed the district attorney shall cause an appeal or writ of error to be perfected in accordance with the terms of the statutes and rules of practice governing the same: Provided, That no appeal or writ of error shall be allowed after six months from the judgment or decree in such suit. From the date of such final judgment or decree interest shall be computed thereon, at the rate of four per centum per annum, until the time when an appropriation is made for the payment of the judgment or decree.”
The words “such final judgment or decree,” as they are used in the proviso of the section, relate to the judgments or decrees of the circuit or district courts, in which the district attorney is charged with duties designated in other portions of. the sections; and we think it is clear, from the language used, that the proviso does not relate to such final judgments or decrees as shall be rendered by this court.
It is beside the question to ask if any reason can be assigned why a judgment creditor who has obtained his judgment through this court should not recover interest equally with one who has sued in the other courts, when both are rendered in the exercise of a jurisdiction identical in kind though differing in amount, are sent to Congress in the same manner, and *56 their payment provided for in the same appropriation act. It is true that judgments of this court are unlimited in amount, while those of the other jurisdiction are for limited sums, and the higher responsibility rests here because of the magnitude of the claims that may ripen into judgment. Justice would seem to dictate that a judgment for a large sum of money authorized to be rendered against the United States by one court should have the same incidents and privileges as a judgment for a small sum authorized to be rendered by another court; but the discrimination has been made by the law-making power, and for the purposes of this case the statute sufficiently answers the question. We must construe the statute according to what we understand from its language, and not by any views we may have of legislative expediency or policy.
It may be that the omission to provide for interest on unap-pealed and unaffirmed judgments for the large sums authorized to be rendered in this court was accidental, but there are stronger reasons for believing the action of Congress in the premises, as we understand that action, was the result of intention.
Respecting the views and opinions of those who have expressed themselves upon the subject in Congress, we are “not at liberty to recur to the views of individual members in debate, nor to consider the motives which influenced them to vote for or against the passage of the measure. The act speaks the will of Congress, and this is to be ascertained from the language used.” United States v. Union Pacific R. R. Co., 91 U. S. R., 79.) We must look to what was. done by the entire body as the result of the debates, rather than to opinions expressed pending the discussion of bills resulting in enactments. “Courts take judicial notice of some circumstances outside of an act which go to show its meaning, and in doing so they frequently take a wide range of illustration and investigation from public records, public documents, general and local history, and other matters of such general and public notoriety as may be supposed to have been in the minds of all the legislators when the act was passed, but they never admit the opinions and evidence of individual witnesses for that purpose. (The Slaughterhouse Cases, 16 Wall., 37; Blake v. National Banks, 23 Wall., 317; Brown v. Piper, 91 U. S. R., 42; Blake v. United States, 103 id., 235; Wilson v. Spalding, 19 Fed. Rep., 304; State v. *57 New Orleans Pacific Railroad, 30 La. Ann., 980; People v. Stevens, 71 N. Y., 527; Fisher v. United States, 15 C. Cls. R., 323; Fendall v. United States, 16 id., 121; Adam Badeau v. The United States, 21 id., 48.)”
The course of legislation, since the act of 1887, in limiting appropriations to the payment of the principal of judgments of this court, except m cases appealed from by the United States and affirmed, is m line with the views we have adopted. And, as if confirmatory of the previous legislation on the subject, the act of 1890 (26 Stat. L., p. 537) making appropriations to supply deficiencies (and which included provision for the payment to the plaintiff of the principal of its judgment) directed that, on judgments in favor of claimants which had been appealed by the United States and affirmed by the Supreme Court, interest at the rate of 4 per cent per annum should be allowed and paid from the date of filing the transcript of judgment in the Treasury Department up to and including the date of the affirmance by the Supreme Court, except that in no case was interest to be allowed after the term of the Supreme Court at which said judgment was affirmed. This legislation fixed the rate of interest on appealed and affirmed judgments of this court the same as that provided on judgments of the circuit and district courts, but again declared the rule for unappealed and unaffirmed judgments of the Court of Claims that interest should be payable only on judgments appealed and affirmed, and excluded interest on any judgment which might accrue after the term at which the judgment was affirmed.
The opinion of the court is that the demurrer of the United States to the plaintiff’s petition be sustained, with leave to the plaintiff to amend within thirty days; but otherwise it is directed that the said petition be dismissed.