## UNITED STATES v. SEABOARD AIR LINE RY. CO. et al.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1922.)

No. 1921.

1. **Courts ⬅426—Jury ⬅19(1)—In District Court suit under Lever Act, all controversies as to seized property may be litigated and tried by jury.**

   Under Lever Act Aug. 10, 1917, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), giving the owner of requisitioned property the right to sue in the District Courts for just compensation, the District Court has complete jurisdiction to hear and determine all controversies arising from taking property of the kind in question, where the amount fixed by the President is deemed by the owner insufficient, and the parties are entitled to a jury trial to ascertain the just compensation.

2. **United States ⬅110—Not chargeable with interest on claims against it, in absence of statutory authority.**

   Under the rules established by the courts and the invariable practice of the executive departments, interest on a claim will not be allowed against the government, except where payment thereof is expressly stipulated for by contract or is given in terms by Act of Congress, even though the claim is one which the District Court can adjudicate, under Judicial Code, § 24, par. 20 (Comp. St. § 991), and the inhibition of allowance of interest applies only to the Court of Claims.

3. **Courts ⬅363—War ⬅14—Proceedings under Lever Act to recover compensation for property seized are not "condemnation proceedings," so as to authorize interest.**

   Proceedings instituted in the District Court by the owners of property seized under Lever Act Aug. 10, 1917, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), by the exercise of war powers of the United

States, to recover just compensation for the property so taken, are not condemnation proceedings, which are proceedings by which the government, in the exercise of its power of eminent domain, institutes its suit against the citizen to acquire title to property, so that a rule allowing interest in condemnation proceedings in conformity to state statutes would not require the allowance of interest proceedings under the act.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Condemnation Proceedings.]

4. War ⟪═⟫14—Courts have no discretion to allow interest on claims under the Lever Act.

Since Congress has not provided for the payment of interest on claims for property requisitioned under Lever Act Aug. 10, 1917, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), the court has no discretion in allowing or withholding interest, nor can it be influenced in that regard by what it considers just and equitable.

Woods, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Action by the Seaboard Air Line Railway Company and others against the United States to recover for property seized by the government for war purposes. Judgment for plaintiffs, and the United States brings error. Reversed, and new trial awarded, unless the interest allowed on the value of the property be abated.

See, also, 275 Fed. 77.

Francis H. Weston, U. S. Atty., of Columbia, S. C. (G. L. B. Rivers, Asst. U. S. Atty., of Charleston, S. C., and Howard W. Ameli, of Washington, D. C., on the brief), for the United States.

George L. Buist, of Charleston, S. C. (Buist & Buist, of Charleston, S. C., on the brief), for defendants in error.

Before WOODS and WADDILL, Circuit Judges, and WEBB, District Judge.

WADDILL, Circuit Judge. This is a writ of error to a judgment of the United States District Court for the Eastern District of South Carolina, in an action at law, wherein the plaintiff in error was defendant, and the defendant in error was plaintiff. The facts of the case are briefly these:

On the 23d day of May, 1919, the President of the United States, pursuant to the provisions of the act of Congress of the 10th of August, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r), familiarly known as the Lever "National Defense Act," requisitioned and possessed himself of certain lands mentioned and described in the proceedings, for governmental purposes, in order to provide storage facilities for supplies necessary to the support of the army, and other public uses connected with the public defense; and the President, pursuant to section 10 of said act (section 3115⅛ii), caused to be appropriately ascertained what was just compensation to be paid by the government for the property taken, with which valuation the plaintiff was dissatisfied, and instituted this suit for the purpose of recovering such reasonable and fair valuation

as he alleged would constitute just compensation for the lands taken. The government duly appeared, admitted the facts as to the taking of the property, and its possession thereof, but denied the valuation placed on the land by the plaintiffs, and insisted that the government valuation was the fair and full value therefor, and constituted just and ample compensation, which amount the government was ready to pay.

Issue being joined, on plaintiff's motion, a jury was impaneled to ascertain what would constitute just compensation for the property taken, and on the 5th of May, 1920, a verdict was returned, awarding to the plaintiff $6,000, the value as of the date of the taking of the property. On the 9th of May, 1920, judgment was entered upon the verdict against the United States, for the amount thereof, with interest from the 23d day of May, 1919, the date on which the property was taken, at the rate of 7 per cent., the court stating that to be the statutory rate of interest in South Carolina. To the entry of this judgment, the United States, by its attorney, excepted, and the case is here upon writ of error to test the validity of the same.

Several assignments of error are presented, but the one pressed and relied upon by the government, all other questions being in effect waived, is as to the allowance of interest on the judgment from any time and at any rate. Did the District Court err in awarding interest at the rate of 7 per cent. upon the verdict, from the date of the taking of the property, some two years antedating the rendition of the same? This is the sole question at issue in this case.

[1] Section 10 of the Lever Act provides that the President may requisition foods, feeds, fuels, and other war supplies, and necessary storage facilities, and that he shall ascertain and pay just compensation therefor, and, if any person is not satisfied with the President's award, he is to receive 75 per cent. of the award, and for the balance of the claim "shall be entitled to sue the United States * * * and jurisdiction is hereby conferred on the United States District Court to hear and determine all such controversies." Under this section, the District Court is given full and complete jurisdiction to hear and determine all controversies arising from taking property of the kind in question, where the amount fixed by the President is deemed by the property owner insufficient, and he may sue, and the parties are entitled to a trial by jury to ascertain the just compensation for the property taken. United States v. Pfitsch (decided June 1, 1921) 256 U. S. 547, 41 Sup. Ct. 569, 65 L. Ed. 1084.

[2] It has long been recognized, by an almost unbroken line of federal decisions, as well as by the invariable practice of the executive departments, that interest will not be allowed against the government, save where payment thereof is expressly stipulated for by contract, or is given in terms by the act of Congress under consideration. Citations from the Supreme and inferior courts to sustain this view, might be given almost without number, but only a few need be mentioned. In Pacific Coast Steamship Co. v. United States, 33 Ct. Cl. 36, Judge Howry, at page 49, aptly states the doctrine as follows:

"Interest, therefore, as a rule, is the creature of the statute. The courts have announced this proposition so often, and text-writers have so generally

accepted the same as correct, it may now be said to be axiomatic that unless the warrant for the payment of interest be found in the statute interest cannot be collected. The principle is well settled 'that the United States are not liable to pay interest on claims against them in the absence of statutory direction. This is so whether such claims originate in contract or in tort, or whether they arise in the ordinary course of business with the government, or under legislation making appropriations for specific relief. The only recognized exceptions are where the government stipulates to pay interest, and where it is expressly given by an act of Congress, either by the name of interest or by that of damages. The practice has long prevailed in the departments of not allowing interest on claims presented, liquidated or unliquidated, except in some way specially provided for. The Supreme Court adopted this rule from a succession of the opinions of the Attorneys General of the United States in a well-considered case on the subject, from which we know of no settled departure. Angarica v. Bayard, 127 U. S. 251. See, also, Gordon v. United States, 7 Wall. 188, and Harvey v. United States, 113 U. S. 243, 249; United States v. New York, 160 U. S. 619."

In one of the very latest cases, United States v. Rogers, 255 U. S. 163, 41 Sup. Ct. 281, 65 L. Ed. 566, relied on by the lower court, in which interest was allowed in condemnation proceedings instituted by the government, Mr. Justice Day, speaking for the court, said:

"It is unquestionably true that the United States upon claims made against it, cannot, in the absence of a statute to that end, be subjected to the payment of interest. Angarica v. Bayard, 127 U. S. 251, 260; United States v. North Carolina, 136 U. S. 211, 216, cited and approved in National Volunteer Home v. Parrish, 229 U. S. 494, 496. In the present case the landowners did not sue upon a claim against the government, as was the fact in United States v. North American Transportation & Trading Co., 253 U. S. 330."

In the Rogers Case, Mr. Justice Day cited United States v. North American Transportation Co., 253 U. S. 333, 334, 335, 336, and 337, 40 Sup. Ct. 518, 64 L. Ed. 935, a suit in its essential features like the one here, save that the latter came from the Court of Claims, and nearly 20 years had elapsed between the taking of the property and the rendition of the judgment. In the last-named case, Mr. Justice Brandeis most comprehensively reviews the authorities bearing on the entire subject, from which it will readily be seen that irrespective of what may be done in condemnation proceedings, brought by the government against a citizen, interest will not be allowed where the government is being sued. This case would seem to remove all doubt on this generally accepted well settled question, and shows that the government, entirely regardless of what may be said of the injustice of its position, has hitherto consistently held to its right as at common law, not to be charged with the consequences of loss arising from delays, even if hardships ensue. The result in this respect is similar to the refusal to allow costs to be taxed against the government, or to be held responsible for the tortious acts of its agents. These conditions necessarily arise in dealing with the sovereign, and for which there is no redress.

The case of Tillson v. United States, 100 U. S. 43, 25 L. Ed. 543, will be found of special application here. There, Congress referred to the Court of Claims to "investigate * * * and 'ascertain * * * the amount equitably due'" as damages for alleged breach of contract, and the question arose as to whether, by the use of the

word "equitable," it was not intended by the act that interest should be allowed on the award. The Supreme Court, speaking through Chief Justice Waite, said, at page 46 of 100 U. S. (25 L. Ed. 543):

"But if Congress had desired to grant such authority, it would have been easy to have said so in express terms; and, because it did not say so, we are led irresistibly to the conclusion that it did not intend to give any such power."

Cases arising under section 1 of the Act of March 3, 1887 (now section 24, par. 20, of the Judicial Code [Comp. St. § 991]), conferring on District and Circuit Courts jurisdiction to hear certain claims against the government, though the inhibition against the allowance of interest applies only to the Court of Claims, and not specially to those courts, they invariably, as far as is known, disallow interest, unless the same is either stipulated for, or given by act of Congress. Marvin v. United States (C. C.) 44 Fed. 405; United States v. Barber, 74 Fed. 483, 20 C. C. A. 616; United States v. Sargent, 162 Fed. 81, 89 C. C. A. 81; Scully v. United States (D. C.) 197 Fed. 327. In other cases before District Courts, arising under special acts of Congress, generally in admiralty cases (Watts v. United States [D. C.] 129 Fed. 222, 226; Pennell v. United States (D. C.) 162 Fed. 75), those tribunals likewise, and for like reasons, invariably refuse to allow interest in that class of litigation. The executive branches of the government have been no less positive in their refusal to allow interest on claims against the government than have the courts to make any ruling on the same subject, the former going to the extent of insisting upon interest on amounts due it, in the adjustment of claims, and at the same time denying to the creditors the like right. United States v. Verdier, 164 U. S. 213, 218, 219, 17 Sup. Ct. 42, 41 L. Ed. 407.

[3] The court based its ruling in this case upon the decision of United States v. Rogers, supra, 255 U. S. 163, 41 Sup. Ct. 281, 65 L. Ed. 566, a condemnation proceeding, and it is earnestly insisted, as it is necessary to do, in order to bring this case within the ruling in that case, that this is virtually a condemnation proceeding. Nothing could be further from the fact, as viewed by the court. What is, and what is not, a condemnation proceeding, can hardly be the subject of serious discussion from a legal standpoint. It is one in which the government in the exercise of its power of eminent domain, one of its most important requisites of sovereignty, institutes its suit against the citizen to acquire title to property, upon the awarding of just compensation for what is proposed to be taken. The government is the actor, the mover. The citizen is the defendant, brought in involuntarily, for the purpose of having taken from him property belonging to him, upon compensation being made therefor. Upon the lawful conclusion of such proceeding, and payment of the amount awarded for the property taken, title thereto vests in the government.

In such proceedings, especially where conducted under the conformity act in states in which interest is allowed on condemnation awards, interest may, in some instances, have been awarded against the government; but the decision in the case of United States v. Rogers, supra, 255 U. S. 163, 41 Sup. Ct. 281, 65 L. Ed. 566, is believed to be

the first and only case in which it has been suggested that interest could be awarded independent of such statute, if the court meant to so state, which is doubtful, it merely saying, on the contrary, that it was not so bound because of the existence of the state statute, but nevertheless thought it a convenient and fair method of ascertaining the sum to which the owner of the land was entitled. The vital point in that case was that there was a state statute allowing interest. The District Court and the Circuit Court of Appeals followed the same in making the allowance of interest, which action the Supreme Court affirmed. As before shown in that case the Supreme Court expressly recognized the doctrine of the disallowance of interest against the government, and it was careful to distinguish between that case and that of United States v. North American Transportation Co., 253 U. S. 330, 40 Sup. Ct. 518, 64 L. Ed. 935, supra, which we think is conclusive of this case.

The present case is in no sense a condemnation proceeding. Here the Congress, in the exercise of its war powers, in express terms authorized the President, Commander-in-Chief of the army, to requisition the property taken for national defense purposes, and to pay a just compensation for the same, and in case of dissatisfaction by the person whose property was taken, he was to receive at once 75 per cent. of the award, and was given permission to sue in the United States District Court for the residue.

Such action is but a plain and simple suit at law, to recover from the government upon an implied contract to pay for property lawfully taken, but not paid for. Mr. Justice Brandeis, in the case of United States v. Pfitsch, supra (not yet reported), speaking for the Supreme Court, considering especially the effect of section 10 as conferring this jurisdiction upon the District Courts, aptly refers to the same as "the usual procedure of a District Court in actions at law for money compensation," and it was held that the right of trial by jury existed in such case. See, also, Langford v. United States, 101 U. S. 341, 25 L. Ed. 1010; Schillinger v. United States, 155 U. S. 163, 166, 15 Sup. Ct. 85, 39 L. Ed. 108; Tempel v. United States, 248 U. S. 121, 129, 39 Sup. Ct. 56, 63 L. Ed. 162; United States v. North American Transportation Co., 253 U. S. 330, 40 Sup. Ct. 518, 64 L. Ed. 935, supra. It will not be found that interest has ever been awarded against the government in such a case, or class of cases. The fact that the District Court hears the case, not as a Court of Claims, but solely under clause 10 of the Lever Act, with the right of trial by jury, makes no difference, since interest can be allowed only when the act of Congress plainly makes provision therefor.

A review of other sections of the Lever Act, authorizing the requisition of property, will give added strength to views herein expressed. Section 12 (section 3115⅛jj) relates to factories, mines, and pipe lines; section 16 (section 3115⅛ll) to distilled spirits; and section 25 (section 3115⅛q) to coal or coke mines or businesses. Each of these three sections provides in identical terms that a person, dissatisfied with the President's award, shall be entitled to sue the United States; but each section makes provision for suit against the United States to recover

just compensation, in terms materially different from those of section 10 —that is to say, these three sections provide for suits (section 145 Judicial Code [Comp. St. § 1136]) in the Court of Claims where the amount in controversy exceeds the sum of $10,000, and in the District Courts (section 24, par. 20, Judicial Code [Comp. St. § 991]), concurrent with the Court of Claims, where the amount involved is less than $10,000. The Court of Claims is inhibited from awarding interest prior to the time of the rendition of the judgment, unless the same be expressly stipulated for (section 177, Judicial Code [Comp. St. § 1168]), and a District Court sitting as a Court of Claims, at least by analogy, has no greater or other power. It can hardly be conceived that Congress in making provision for payment of property requisitioned by the government, under the same act, meant to deny interest to claimants under some sections of the law, and to leave it open to courts to allow the same on awards under other provisions thereof.

[4] In reaching its conclusion, the court has no discretion in allowing or withholding interest, nor can it be influenced by mere equitable consideration of what may appear in a particular case to be just and right. The fact that Congress has or has not seen fit to make provision for the payment of interest, must be its guide. It may not substitute its judgment for that of Congress, and it should be slow to assume that Congress did not act advisedly and wisely in foreseeing that during a great war, and the period following its conclusion, all sorts and kinds of claims would have to be met and adjusted, necessarily consuming much time, and almost inevitably involving heavy loss to the government. Under these conditions, Congress rightfully refused to impose upon the government the further burden of paying interest on claims, pending delays incident to such contests. Indeed, all claim of injustice on the part of the government is silenced, when it undertook voluntarily the payment in advance of 75 per cent. of its award, on account of such claims. Assuming the present case to be fairly typical of those likely to arise, it will readily be seen how far-reaching and important the question is. Here the President's appraisers have fixed the value of the property to be taken at $235.80, one-fourth of which is $58.95. Suit was instituted to recover $100,000, and the jury rendered a verdict in favor of the plaintiff for $6,000, upon which 7 per cent. interest per annum was allowed by the court, antedating the judgment some two years. Thus the annual interest allowed on the debt was almost twice the amount of the government's original valuation.

The judgment of the lower court will be reversed, and a new trial awarded, unless the defendant in error shall, within 60 days from the date of the judgment hereon, file with the clerk of the lower court, and a copy thereof with the clerk of this court, a remittitur abating all interest upon the judgment.

Reversed.

WOODS, Circuit Judge (dissenting). Section 10 of the Act of August 10, 1917, 40 Stat. 276, 279 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), provides:

"That the President is authorized, from time to time, to requisition foods, feeds, fuels, and other supplies necessary to the support of the army or the maintenance of the navy, or any other public use connected with the common defense, and to requisition, or otherwise provide, storage facilities for such supplies; and he shall ascertain and pay a just compensation therefor. If the compensation so determined be not satisfactory to the person entitled to receive the same, such person shall be paid seventy-five per centum of the amount so determined by the President, and shall be entitled to sue the United States to recover such further sum as, added to said seventy-five per centum, will make up such amount as will be just compensation for such necessaries or storage space, and jurisdiction is hereby conferred on the United States District Courts to hear and determine all such controversies."

Under this act the President, on May 23, 1919, requisitioned and took possession of a parcel of land, the property of the Seaboard Air Line Railway Company, and ascertained its value to be $235.80, but paid no part of the estimated value. Being dissatisfied with this valuation, the railway company on August 9, 1920, sued the United States to recover $99,823.15—the difference between $100,000, the alleged value of the property, and 75 per centum of the value fixed by the President, and interest thereon from the date of the taking. On trial the following issue was submitted to the jury without objection:

"What, on May 23, 1919, was the fair and reasonable value which would constitute a just compensation to be paid for the taking for public purposes of the lands mentioned and described in the petition herein?"

On May 5, 1921, the jury found the fair and reasonable value of the land on May 29, 1919, to be $6,000. Thereupon the court entered judgment in favor of the railway company for $6,000, with interest from May 23, 1919. The United States brings the case here, assigning error in the allowance of interest from the date of the taking of the land on its value at that date as fixed by the jury.

Section 177 of the Judicial Code (Comp. St. § 1168) forbids the Court of Claims to allow interest on claims against the government until after judgment. The general proposition, that interest cannot be allowed on claims against the government, unless it is so provided by statute, is too well settled for discussion. Authorities on this general proposition are cited in United States v. North American T. & T. Co., 253 U. S. 330, 40 Sup. Ct. 518, 64 L. Ed. 935. That suit being in the Court of Claims, although brought by the owner for the value of land taken, interest was denied, because the statute forbade it. But the court says:

"It may be that interest could be collected as part of the just compensation in condemnation proceedings brought by the government."

In United States v. Rogers, 255 U. S. 163, at page 169, 41 Sup. Ct. 281, at page 282 (65 L. Ed. 566), the court thus states the rule:

"It is unquestionably true that the United States, upon claims made against it, cannot, in the absence of a statute to that end, be subjected to the payment of interest. Angarica v. Bayard, 127 U. S. 251, 260; United States v. North Carolina, 136 U. S. 211, 216, cited and approved in National Volunteer Home v. Parrish, 229 U. S. 494, 496. In the present case the landowners did not sue upon a claim against the government, as was the fact in United States v. North American Transportation & Trading Co., 253 U. S. 330. The government was seeking for purposes authorized by statute to appropriate the lands, and it had actually taken them, and had deprived the owners of all beneficial

use thereof from the date from which the allowance of interest ran.  *  *  *
In fixing the compensation, the District Court, and the Circuit Court of Appeals in affirming the judgment, followed the New Mexico statute fixing the rate of interest at 6 per cent. This was in conformity with a former ruling of the Circuit Court of Appeals applying the statutes of Minnesota to lands appropriated in that state. United States v. Sargeant, 162 Fed. 81. The government urges that the Conformity Act of August 1, 1888, does not require the United States government to be bound by the rule of the state statute in the allowance of interest. This may be true, but we agree with the courts below that the allowance of just compensation by giving interest from the time of taking until payment is a convenient and fair method of ascertaining the sum to which the owner of the land is entitled."

There is no denial in the majority opinion in the case before us that just compensation required by the Constitution is not complete without the payment of the value at the date of the taking with interest to the date of payment. But interest is denied on the ground (1) that this proceeding under section 10 is not a condemnation proceeding; and (2) that, even if it is a condemnation proceeding, it is not one instituted by the United States, but an independent suit instituted by the owner of the land.

Any proceeding prescribed or authorized by a state or the federal Legislature to acquire land for public purposes and to ascertain just compensation for it is a condemnation proceeding, and every step taken in it from the beginning to the end is a part of the condemnation. It may be a suit by the government before taking without other proceeding, as Kohl v. United States, 91 U. S. 367, 376, 23 L. Ed. 449. In Garrison v. New York, 21 Wall. 196, at page 204 (22 L. Ed. 612), the court says:

"The proceeding to ascertain the benefits or losses which will accrue to the owner of property when taken for public use, and thus the compensation to be made to him, is in the nature of an inquest on the part of the state, and is necessarily under her control. It is her duty to see that the estimates made are just, not merely to the individual whose property is taken, but to the public which is to pay for it."

In Kennebec Water Dist. v. Waterville, 96 Me. 234, 236, 52 Atl. 774–789, condemnation is defined to be:

"A special proceeding, provided and authorized by the sovereign power by whose authority the property is taken, to determine a specific fact. The proceedings are in the nature of an inquisition on the part of the state."

See, also, Filbin Corporation v. United States (D. C.) 265 Fed. 354.
The title does not vest in the government until the just compensation has been ascertained on a fair hearing and actually paid. Garrison v. United States, supra. It seems to me perfectly clear that the taking and method of ascertainment of value and payment prescribed by section 10 is a condemnation proceeding instituted by the government. The Congress has in one section prescribed an exclusive and complete scheme of condemnation to be instituted by the government. Each successive step prescribed by the statute—the taking, the tentative ascertainment of value, the payment of 75 per centum of such valuation, the suit by a dissatisfied landowner—is a part of one condemnation proceeding instituted by the United States. This being so, it seems to follow the landowner is entitled to interest on the value at the date of

the taking until payment, on the authority of United States v. North American T. & T. Co., 253 U. S. 330, 40 Sup. Ct. 518, 64 L. Ed. 935, and United States v. Rogers, 255 U. S. 163, 41 Sup. Ct. 281, 65 L. Ed. 566.

The distinction that a landowner is entitled to interest when the government institutes the proceeding, but not entitled to it when the government forces him to institute it, is admittedly mounted on a technicality having no foundation in justice. It seems to me, to deny interest justly due in this case is to further displace the just compensation required by the Constitution by the additional technical holding that the suit brought by the landowner is not a part of the condemnation proceeding instituted by the United States.