CARLISLE v. COOPER et al.

(Circuit Court of Appeals, Second Circuit. October 25, 1894.)

1. COSTS—AGAINST THE UNITED STATES.
   In the absence of legislation by congress authorizing costs against the government, they cannot be imposed in any suit to which it is a party; and neither the act of June 1, 1872 (Rev. St. § 914), conforming the practice of the federal courts to that of the states where they are held, nor the act of August 1, 1888, authorizing condemnation proceedings, and making similar provision as to conformity to state practice, etc., gives such authority.

2. SAME—FOLLOWING STATE PRACTICE.
   The secretary of the treasury, on behalf of the United States, instituted in the southern district of New York a suit to condemn certain lands, pursuant to the act of congress of August 1, 1888, authorizing such proceedings, and conforming the practice, etc., to that in similar proceedings in state courts. After trial, appointment of commissioners, and appraisal, it appeared that the funds appropriated by congress were insufficient to pay the award, and the suit was thereupon discontinued. The court, following the provisions of the New York condemnation law, awarded costs to the several defendants, and an allowance to an attorney appointed to represent defendants not served. Held, that both were unauthorized, no statute having permitted the rendition of judgment for costs against the United States in such cases, and the allowance being only recoverable in an action against the government brought conformably with an act of congress authorizing such a recovery.

In Error to the Circuit Court of the United States for the Southern District of New York.

This was a proceeding by the secretary of the treasury of the United States for the condemnation of certain real estate in the city of New York, embraced in the block bounded by Bowling Green, Whitehall, Bridge, and State streets, and was in pursuance of the acts of congress of August 1, 1888 (25 Stat. 357); September 14, 1888 (25 Stat. 479); June 28, 1890 (26 Stat. 183); and of March 3, 1891 (26 Stat. 850). Upon the trial, judgment was given for the petitioner, and commissioners of appraisal were appointed. One year subsequent to the filing of their report, the petitioner having failed to move for

a confirmation, the proceedings were dismissed, at the instance of certain of the defendants, the judgment vacated, and an extra allowance awarded, sufficient to cover their costs and expenses herein. The secretary of the treasury brings error.

Prior to the filing of the petition in this proceeding, there was an application by the same petitioner to comdemn the same land, pursuant to a special act existing in the state of New York. This application was dismissed. 45 Fed. 396.

A. B. Boardman, for plaintiff in error.
Edward Mitchell, U. S. Atty.
Wm. D. Shipman and Chas. C. Marshall, for defendants in error.
Shipman, Larocque & Choate, Anderson, Howland & Murray, J. Frederick Kernochan, and Strong & Cadwalader, for owners of lots, 2, 5, 6, 7, 15, and 16, defendants in error.

Before BROWN, Circuit Justice, and WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The plaintiff in the court below seeks by this writ of error to review a judgment of the circuit court in a suit brought to condemn certain real estate in New York City for public uses, dismissing the suit, and awarding costs and additional allowances to the several defendants, owners of different parcels of the land, against the plaintiff. He assigns error only of that part of the judgment which awards the costs and additional allowances.

The suit was brought pursuant to an act of congress of August 1, 1888, entitled "An act to authorize condemnation of land for sites of public buildings, and for other purposes." This act authorizes the secretary of the treasury, or any other officer of the government having authority to procure real estate for public uses, to acquire the same for the United States by condemnation under judicial process, and confers jurisdiction upon the circuit or district courts of the United States of the district wherein the real estate is located. Section 2 of the act provides as follows:

"The practice, pleadings, forms and modes of proceeding in causes arising under the provisions of this act shall conform as near as may be to the practice, pleadings, forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of the court to the contrary notwithstanding."

After the suit had proceeded to a trial upon the issues made by the answers of the several defendants, a decision that the plaintiff was entitled to the appointment of commissioners of appraisal, the appointment of commissioners, the hearing of testimony, and the filing of the report of the commissioners, it appeared that the money in the hands of the secretary of the treasury, appropriated by congress for the acquisition of the property, was insufficient to satisfy the awards reported by the commissioners. Thereupon, the defendants moved to dismiss the suit, and at the hearing of that application the plaintiff elected that the suit be discontinued and wholly dismissed

as to all the parties defendant thereto, and as to all the real estate in controversy. The court, in discontinuing and dismissing the suit, adjudged that the plaintiff pay, out of any funds in the treasury department of the United States available for such purposes, to the several defendants, certain taxable costs, together with an additional allowance of 5 per centum, as further costs, upon the amount awarded by the report of the commissioners to each defendant. The aggregate sum of the additional allowance was $105,000. The court also adjudged that the plaintiff pay, out of any funds in the treasury department of the United States available for such purposes, the sum of $1,000 to Arthur H. Masten, the attorney for the defendants who had not been personally served or appeared in the action. The additional allowances were made pursuant to section 3372 of the New York Code of Civil Procedure, which authorizes the court, in condemnation suits, to grant to the prevailing party "an additional allowance for costs, not exceeding five per centum upon the amount awarded." The allowance to Mr. Masten was made pursuant to sections 3363 and 3372 of the Code, which provide as follows:

"Sec. 3363. * * * If a service other than personal has been made upon any defendant and he does not appear upon the presentation of the petition the court shall appoint some competent attorney to appear for him and attend to his interests in the proceeding."

"Sec. 3372. * * * The court shall also direct in the final order what sum shall be paid * * * to an attorney appointed by the court to attend to the interests of any defendant upon whom other than personal service of the petition and notice may have been made, and who has not appeared, for costs, expenses and counsel fee, and by whom, or out of what fund, the same shall be paid."

It is insisted for the plaintiff in error that no costs or allowances can be awarded against the government without permission of an act of congress, and that there is no such act applicable to the present case. Whether costs were properly awarded against the government, and, if so, whether the amount allowed by the circuit court was authorized by law, are questions which depend upon the effect of the act of congress of August 1, 1888. Section 721 of the United States Revised Statutes (originally section 34 of the judiciary act of 1789) has no application to the case. U. S. v. Thompson, 98 U. S. 486; Ex parte Fisk, 113 U. S. 720, 5 Sup. Ct. 724. In the absence of legislation by congress authorizing costs against the government, they cannot be imposed in any suit to which it is a party. The principle is that the sovereign power is not amenable to judgments for damages or costs without its own consent. U. S. v. Hooe, 3 Cranch, 73; U. S. v. Barker, 2 Wheat. 395; The Antelope, 12 Wheat. 546; U. S. v. McLemore, 4 How. 286; U. S. v. Boyd, 5 How. 29; Reeside v. Walker, 11 How. 272; Briggs v. Light Boats, 11 Allen, 157; State v. Kinne, 41 N. H. 238; Collier v. Powell, 23 Ala. 579; U. S. v. Davis, 4 C. C. A. 251, 54 Fed. 147. When, however, the United States institute a suit, they waive their exemption so far as to allow a presentation by the defendants of set-offs, legal and equitable, to the extent of the demand made or property claimed, and stand, with ref-

erence to the rights of the defendants, precisely as private suitors, except that they are exempt from costs and from affirmative relief against them, beyond the demand or property in controversy. The Siren, 7 Wall. 152. It was undoubtedly the purpose of the act of August 1, 1888, to extend to condemnation suits brought by the government the provisions of the act of June 1, 1872 (now section 914, Rev. St. U. S.), which prescribes, in effect, that in civil actions at law the circuit and district courts of the United States are to conform their practice and procedure, as near as may be, to that of the state courts in like causes in the state wherein such circuit or district courts are held. If such suits had been governed by these provisions, the act of August 1, 1888, was wholly unnecessary legislation. The act explicitly extends the provisions of the former act to government condemnation suits, and includes them in the category of causes in which the circuit and district courts of the United States are to conform their practice, as near as may be, to that prescribed for the state courts by the laws of the state in which the suit is brought. As its phraseology is industriously copied from the former act, the same meaning must be given to it. It has never been supposed that the act of June 1, 1872, was intended as a consent by congress to waive the immunity of the government from judgments for damages or costs. We have not been referred to any adjudication, nor have we found any, in which it has been held to have that effect. It was intended to remedy the inconvenience to the legal profession of having different systems of practice in the federal and the state courts in the same state. Nearly all the states had enacted codes of practice, and the common-law system of pleadings and practice which obtained in the federal courts was obnoxious to the generation of lawyers who had been educated under the codes. The inconvenience was recognized, and the statute enacted to obviate it. Nudd v. Burrows, 91 U. S. 441. Congress could not have supposed that its remedial legislation would permit judgments against the government for damages or costs. If any such suggestion had been made, it would have been met by the consideration that any attempt, in state codes or practice acts, to accomplish that result, would be nugatory legislation. U. S. v. Thompson, supra. These observations are equally applicable to the act of August 1, 1888.

When congress has intended to permit claims and judgments to be recovered against the United States, it has spoken in no uncertain terms. By the act of March 3, 1887, it has made provision for suits against the government of the United States and for judgments, which, as to the amount due, shall be binding and conclusive upon the parties. Section 15 of that act prescribes that, if the government of the United States shall put in issue the right of the plaintiff to recover, the court may, in its discretion, allow costs to the prevailing party. Outside of this statute, and some other statutes relating to special cases, we know of no authority which permits a judgment to be rendered against the government of the United States for costs. So far as the judgment of the circuit court attempts to impose such a liability, it is erroneous.

The allowance to a defendant, taxable by the New York Code of Civil Procedure, is, in essence and in a technical sense, an item of costs. It is treated as such by the Code provisions, and by the decisions of the courts of New York. The allowance to Mr. Masten stands upon a different footing. Unlike ordinary costs, such an allowance does not belong to the party, and is not included as a part of his judgment. The Code directs the court to appoint some competent attorney to protect the interests of the absent property owner throughout the progress of the suit, and award to such attorney such compensation as in its judgment may seem proper. The property owner does not become responsible for compensation, and the allowance is not an indemnity to him for his expenses. The allowance made to Mr. Masten to compensate him for services rendered as an officer of the court may be the basis of a recovery in a suit brought pursuant to the act of March 3, 1887. But a judgment for a money recovery can only be obtained against the government of the United States in a suit instituted conformably with a statute of congress which authorizes such a recovery. The judgment is reversed, and the suit remitted to the circuit court, with instructions to modify the judgment by striking out all the costs and allowances therein awarded.