## UNITED STATES v. SARGENT.

(Circuit Court of Appeals, Eighth Circuit. May 4, 1908.)

No. 2,699.

1. UNITED STATES—CLAIMS—INTEREST.

Under the express provisions of Rev. St. § 1091 (U. S. Comp. St. 1901, p. 747), interest is not recoverable against the United States on unpaid accounts or claims, in the absence of a stipulation to pay interest, or a statute allowing it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, United States, § 93.]

2. EMINENT DOMAIN—TAKING LAND—NATURE OF PROCEEDING.

A proceeding by the United States for the condemnation of land for public use, and for the assessment and payment of damages therefor, is not a proceeding to collect an account or claim against the United States, but an adversary proceeding instituted by the United States against landowners for the taking thereof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 3.]

3. SAME—EXERCISE OF RIGHT.

The exercise of a right of eminent domain is a prerogative of sovereignty, but is subject to the constitutional provision requiring payment of "just compensation."

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 1, 2, 171.]

4. SAME—INTEREST ON AWARD.

Act Cong. Aug. 1, 1888, c. 728, 25 Stat. 357 (U. S. Comp. St. 1901, p. 2516), authorizes condemnation of land for public use by the United States, and section 2 declares that the practice, pleadings, forms, and modes of proceeding shall conform to the practice, pleadings, forms, and proceedings existing in courts of record in like cases in the state. Rev. Laws Minn. 1905, § 2534, declares that on payment of damages, with costs and interest, if any, in condemnation proceedings, the petitioner may take possession, etc., and section 2535 declares that all such damages, whether assessed by commissioners or on appeal, shall bear interest from the time of filing the commissioners' report. *Held*, that an order in proceedings in the United States District Court for the District of Minnesota, confirming a report of commissioners in condemnation proceedings by the United States, properly awarded interest on the damages assessed for the land taken from the date of the commissioners' report.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 397–399½.]

Philips, District Judge, dissenting.

In Error to the District Court of the United States for the District of Minnesota.

Charles H. Daues (Charles C. Houpt, on the brief), for the United States.

Luther C. Harris, for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and PHILIPS, District Judge.

ADAMS, Circuit Judge. The United States by authority of Act Aug. 1, 1888, c. 728, 25 Stat. 357 (U. S. Comp. St. 1901, p. 2516), instituted proceedings in the court below to condemn certain real es-

tate situate in Duluth, Minn., for a post-office site. Section 2 of the Act provides that:

"The practice, pleadings, forms and modes of proceeding in causes arising under the provisions of this act shall conform as near as may be to the practice, pleadings, forms and proceedings existing at the time in like cases of the courts of record of the state within which such Circuit or District Courts are held, any rule of the court to the contrary notwithstanding."

The Revised Laws of Minnesota of 1905, relating to the subject of eminent domain, provide, first, for a petition by the state or corporation authorized to take private property for public use, describing the property, giving the names of the owners, and praying for the appointment of commissioners to appraise the damages occasioned by the taking (section 2524); second, for a hearing of the petition after due notice and for the appointment of "three disinterested commissioners * * * to ascertain and report the amount of damages that will be sustained by the several owners on account of such taking" (section 2526); third, for qualifying the commissioners, hearing by them touching the matters submitted to them, and that "they shall make a separate assessment and award of the damages which in their judgment will result to each of the owners of such land by reason of such taking and within thirty days after making such assessment and award report the same to the court under their hands" (section 2527); fourth, for filing of the commissioners' report in the clerk's office, notice to the petitioner of such filing, and payment by the petitioner of the fees and disbursements of the commissioners (section 2528); fifth, for the payment or tender of payment of the damages awarded by the commissioners at any time after the notice provided for in section 2528 shall be delivered to the petitioner; sixth, for an appeal from the award of the commissioners to the court either by the owner of the lands taken or by the petitioner; seventh, for a hearing of the appeal by the court after the framing of the issues either by jury or by the court and for the reassessment of the damages "as justice may require" (section 2533). Then follow the three following sections:

"Sec. 2534. Judgment shall be entered upon the verdict or decision, fixing the amount of damages payable to the several parties concerned, and the terms and conditions of the taking. Upon payment of said damages, with costs and interest, if any, the petitioner shall be permitted to take possession of the premises, and appropriate the same to the public uses for which they were taken, subject to the provisions of such judgment; and until reversed or modified in a direct proceeding begun for that purpose, said judgment shall be binding upon the petitioner and all other parties thereto, and upon their respective successors and assigns.

"Sec. 2535. All damages allowed under this chapter, whether by the commissioners or upon appeal, shall bear interest from the time of the filing of the commissioners' report. If the award be not paid within sixty days after such filing, or, in case of an appeal within the like period, after final judgment thereon, the court, on motion of the owner of the land, shall vacate the award and dismiss the proceeding as against such land.

"Sec. 2536. Upon the determination of all appeals taken in said proceeding, and the payment of all damages, interest, and costs awarded or recovered therein, and when there has been no appeal from the report of the commissioners, and more than thirty days have expired since the service upon all the parties to said proceeding of the notice referred to in Sec. 2528, and payment has been made of all damages and interest allowed by said commissioners, the court, upon motion of the petitioner, shall enter a final decree es-

tablishing the rights of said petitioner in the whole or any part of the lands so taken."

On June 1, 1907, upon due proceedings taken, three commissioners were appointed by the court below to ascertain and report the amount of damages which would be sustained by the several owners of the land sought to be taken in this case. On June 12, 1907, the commissioners reported, fixing the damages to be paid the owners at the sum of $17,500. On July 1, 1907, a stipulation was filed by the parties consenting to a confirmation, of the award of the commissioners. On August 17, 1907, upon the presentation of a form of order for the consideration of the court, the attorney for the owners demanded that interest be added to the amount awarded by the commissioners from the date of the filing of their report until the date when payment of the damages should be made. This demand was resisted by the attorney of the United States. Afterwards, on August 19, 1907, the court entered an order confirming the report of the commissioners, and providing, over the objection and exception of the United States:

"That the United States of America do pay into this court the sum of $17,-500.00 and interest on said sum at the rate of six per cent. per annum from said 12th day of June, A. D., 1907, up to and including the date on which said sum is paid into the registry of this court [for the owners]."

On this exception, and this alone, the United States prosecuted error, and in brief and argument of counsel the only ground urged is that the court below should not have ordered the United States to pay interest on the amount of the award. To this, therefore, we will confine our attention.

It is well settled that, in the absence of a stipulation to pay interest or a statute allowing interest, none can be recovered against the United States upon unpaid accounts or claims. Section 1091, Rev. St. U. S. (U. S. Comp. St. 1901, p. 747); Act March 3, 1887, c. 359, 24 Stat. 505 (U. S. Comp. St. 1901, p. 752); Tillson v. United States, 100 U. S. 43, 25 L. Ed. 543; Angarioa v. Bayard, 127 U. S. 251, 260, 8 Sup. Ct. 1156, 32 L. Ed. 159; Baxter v. United States, 2 C. C. A. 411, 51 Fed. 671. It is upon or in analogy with this principle that the United States contends that interest upon the amount of the award in this case should not have been allowed. We are unable to agree with this contention. There is a great difference between the assertion of a claim or account against the United States by a person who possesses it and a proceeding of this kind instituted by the United States. This proceeding, instead of one to collect an account or claim against the United States, is an adversary proceeding instituted by the United States against owners of land to take it from them. The landowners are not plaintiffs prosecuting claims, but defendants resisting a proceeding to deprive them of what is theirs until a condition precedent is fulfilled. Mason City R. R. Co. v. Boynton, 204 U. S. 570, 27 Sup. Ct. 321, 51 L. Ed. 629. The exercise of the right of eminent domain ·is a prerogative of sovereignty in this country, but it is subject to the condition imposed by the Constitution of paying "just compensation therefor."

Congress has directed the courts of the United States to the laws of the state wherein the land lies for a method of determining what is

"just compensation" in a case like this. Reference to the laws of Minnesota, where the land in question is situate, already epitomized, discloses that a board of commissioners is in the first instance to appraise the damages occasioned by the taking and report the same to the court in which proceedings for condemnation were instituted, and that an appeal may be taken from the award of the commissioners to the court. As is well known and as is illustrated in this case, a further appeal may follow. Considerable time may, elapse after the commissioners fix the value of the land before it is ultimately paid for. They can only fix it as of the time they act. They cannot say what it will be at any indefinite time in the future. The value may for many reasons change, and the rental value may be materially affected by the tenure of the owner rendered uncertain by possible protracted litigation. Considerations like these doubtless prompted the Legislature of the state to provide that the amount of the award should bear interest until paid as the best and fairest available method of providing against the possible consequences just suggested. Without holding that the requirement for payment of interest is one of the "modes of proceeding" which, by section 2 of the act of August 1, 1888, is made compulsory upon the courts of the United States, we are satisfied to conform to it as a palpably fair and reasonable method of performing the indispensable condition to the exercise of the right of eminent domain, namely, of making "just compensation" for the land as it stands, at the time of taking. "The time of taking" under the Minnesota statute, supra, is when payment is made for it. "Just compensation" as of that time must be made. Monongahela Navigation Co. v. United States, 148 U. S. 324, 341, 13 Sup. Ct. 622, 37 L. Ed. 463. It is better, when possible, to act in harmony rather than in conflict with the established policy of a state.

By Act March 3, 1875, c. 166, 18 Stat. 506, Congress authorized the taking possession of lands rendered necessary by the prosecution of certain improvements upon the Wisconsin and Fox rivers "after first having paid or secured to be paid the value thereof which may have been ascertained in the mode provided by the laws of the state wherein such property lies." The same act provided for compensating owners of adjacent lands for injuries sustained by them by overflows occasioned by improvements already made and provided that such compensation should "be ascertained in like manner" that is, in the manner provided by the laws of the state. The statute of Wisconsin provided that such compensation should be ascertained according to the method prescribed for acquiring title to lands by railroad companies; that is, in harmony with the general principles governing the exercise of the right of eminent domain. In proceedings instituted by the United States in the state courts of Wisconsin under this act, the rule laid down was that, where lands were permanently overflowed, they should be treated as lands absolutely taken, and that the compensation to be paid therefor was the value of such lands when overflowed with interest thereon from the time of the overflow. Jones, Adm'r, v. United States, 48 Wis. 385, 389, 4 N. W. 519; Sweaney v. United States, 62 Wis. 396, 401, 22 N. W. 609; Velte v. United States, 76 Wis. 278, 284, 45 N. W. 119. The Jones Case was taken by writ of error to the Supreme Court of the

United States (United States v. Jones, 109 U. S. 513, 3 Sup. Ct. 346, 27 L. Ed. 1015), where the judgment below was affirmed. While the opinion makes no reference to the measure of damages adopted by the Wisconsin courts, the rule declared on that subject was nevertheless before the Supreme Court, and no fault was found with it. These last-mentioned cases afford the nearest discoverable analogy to the case under consideration, and reinforce the conclusion reached.

The judgment is affirmed.

PHILIPS, District Judge (dissenting). Considerations of public interest impel me to dissent. Viewed merely in the light of the small pecuniary amount involved in the individual case, it might be said the government could have well forborne this appeal. But the principle concerned is of vast practical importance. The constant recurring necessity of the general government to invoke the power of eminent domain demands that the departments of justice and treasury in instituting condemnation proceedings should definitely understand whether or not the government is to be subjected to the notions of the Legislature of the state, in which the land to be taken for public use is situated, as to what is the measure of the just compensation to be paid to the owner.

The commissioners in this case assessed the value of the land at $17,-500. When the Circuit Court convened to pass upon the question of affirmance or rejection, on suggestion of the condemnee, the court added to that assessment interest at the rate of 6 per cent. per annum from the date of the report until the assessment should be paid. This was done by the Circuit Court because the statute of Minnesota so directed. The obligatory force of that statute upon the government of the United States was sought to be justified by the provisions of Act Cong. Aug. 1, 1888, c. 728, 25 Stat. 357 (U. S. Comp. St. 1901, p. 2516), which are as follows:

"That in every case in which the Secretary of the Treasury or any other officer of the government has been, or hereafter shall be, authorized to procure real estate for the erection of a public building or for other public uses he shall be, and hereby is, authorized to acquire the same for the United States by condemnation, under judicial process, whenever in his opinion it is necessary or advantageous to the government to do so, and the United States Circuit or District Courts of the district wherein such real estate is located, shall have jurisdiction of proceedings for such condemnation, and it shall be the duty of the Attorney General of the United States, upon every application of the Secretary of the Treasury, under this act, or such other officer, to cause proceedings to be commenced for condemnation, within thirty days from the receipt of the application at the department of justice.

"Sec. 2. The practice, pleadings, forms and modes of proceeding in causes arising under the provisions of this act shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of the court to the contrary notwithstanding."

For the purpose of securing lands for post-office sites, as for other public use, the right to exercise the power of eminent domain inheres in the government of the United States as an independent sovereign. It is superior to the right of the individual owner of the land, because the exercise of this right is indispensable to the proper support and protection of the government. Boom v. Patterson, 98 U. S. 403, 25

L. Ed. 206; Kohl v. U. S., 91 U. S. 367, 23 L. Ed. 449; U. S. v. Jones, 109 U. S. 513, 3 Sup. Ct. 346, 27 L. Ed. 1015; Chappell v. U. S., 160 U. S. 499, 510, 16 Sup. Ct. 397, 40 L. Ed. 510. This power of the government is in no wise dependent upon state authority; nor can the state condition its exercise in any degree. The only condition imposed by the federal Constitution is that the private property of the citizen shall not be taken without "just compensation." Congress may prescribe the manner of procedure in the ascertainment of the compensation to be awarded. The second section of the act of 1888, supra, was but the carrying over to the proceedings in condemnation cases the identical provision found in section 914 of the Revised Statutes (U. S. Comp. St. 1901, p. 684), known as "the conformity act." On well-settled rules it must receive the same construction and applicability as had been given to said section 914. As said by Judge Wallace, in Carlisle v. Cooper, 64 Fed. 472, 475, 12 C. C. A. 235. "As its phraseology is industriously copied from the former act, the same meaning must be given to it"—which has ever been construed and applied by the federal courts as merely modal. In Nudd et al. v. Burrows, 91 U. S. 426, 441, 23 L. Ed. 286, Mr. Justice Swayne said:

"The purpose of the provision is apparent upon its face. No analysis is necessary to reach it. It was to bring about uniformity in the law of procedure in the federal and state courts of the same locality. * * * The identity required is to be in 'the practice, pleadings and forms and modes of proceedings.'"

Again, in Indianapolis, etc., R. R. Co. v. Horst, 93 U. S. 300, 301, 23 L. Ed. 898, the same justice again said:

"The conformity is required to be 'as near as may be'—not as near as may be possible, or as near as may be practicable. This indefiniteness may have been suggested by a purpose. It devolved upon the judges to be affected the duty of construing and deciding, and gave them the power to reject, as Congress doubtless expected they would do, any subordinate provision in such state statutes which in their judgment would unwisely incumber the administration of the law or tend to defeat the ends of justice in their tribunals."

Mr. Justice Matthews, in Phelps v. Oakes, 117 U. S. 236, 238, 6 Sup. Ct. 714, 29 L. Ed. 888, declined to accede to the contention that the statute of Missouri, which declared that in the action of ejectment every tenant of the property summoned in the action shall give notice thereof to the landlord or agent, under penalty of forfeiting the value of three years' rent, and that the person from or through whom the defendant claims the premises may, on motion, be made a codefendant, should be followed in the federal courts. He then adverted to said section 914, and reaffirmed the statement in Indianapolis & St. Louis R. R. Co., 93 U. S. 301, 23 L. Ed. 898, to the effect that the federal courts would reject any subordinate provision in state statutes which, in their judgment, would unwisely incumber the administration of the law or tend to defeat the ends of justice in their tribunals.

In Luxton v. North River Bridge Co., 147 U. S. 337, 338, 13 Sup. Ct. 356, 357, 37 L. Ed. 194, which was a condemnation proceeding, the property owner sought to sustain an appeal from the appointment of commissioners by the court, as permitted under the Code of New Jer-

sey, where the proceeding was had. Mr. Justice Gray, in rejecting the appeal at that stage of the proceeding, said:

"This direction that the proceedings in the Circuit Court of the United States shall 'conform as nearly as may be to the practice in the courts of the state,' must, of course, like the corresponding direction as to practice, pleadings, and procedure in section 914 of the Revised Statutes, give way whenever to adopt the state practice would be inconsistent with the terms, defeat the purpose, or impair the effect of any legislation of Congress."

In Carlisle v. Cooper, 64 Fed. 472, 12 C. C. A. 235, the Secretary of the Treasury instituted proceedings in the United States Circuit Court for the condemnation of certain real estate for governmental purposes under said statute of 1888. Commissioners were appointed in accordance with the local statute of the state of New York, who made their report assessing the value of the property to be taken, and, it appearing that the money in the hands of the Secretary of the Treasury appropriated by Congress for the acquisition of the property was insufficient to satisfy the award reported, thereupon the government discontinued the proceeding. In dismissing the proceedings, the court adjudged certain taxable costs against the government to be paid out of any funds in the treasury department available for such purpose, and also a fee of $1,000 to the defendant's attorney. These allowances were made by the court in conformity with the Code of Civil Procedure of the state prescribed in condemnation proceedings. This was sought to be sustained by the defendant therein under the provision of said section 2 of the act of 1888. This contention was rejected by the Court of Appeals of the Second Circuit as not within the contemplation of Congress in adopting the conformity act.

In High Bridge Lumber Company v. U. S., 69 Fed. 320, 16 C. C. A. 460, the United States proceeded, under the act of 1888, to condemn certain lands for a lock and dam on the Kentucky river. The property owner insisted that in estimating the damages the commissioners appointed should take into consideration the consequential damages to contiguous land not taken as would result from the construction of the works, such damages being permissible under the state statute, when the land was sought to be appropriated for railroad purposes. It was held that the damages were to be assessed according to the common-law rule, which does not recognize such consequential damages. Judge Lurton, who delivered the opinion of the court, inter alia, said:

"The provision in the act of Congress heretofore cited, requiring condemnation proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the states wherein the proceedings may be instituted, has no application to a condemnation for river improvement purposes instituted by the United States other than to require that the practice and proceeding shall, 'as near as may be,' be in accordance with like causes in the courts of record of the state within which such Circuit or District Court is held. It is not to be conceived that Congress intended that a legislative requirement, giving to an owner consequential damages when his land was sought to be appropriated by a railroad company, should have application when the United States undertakes to condemn land necessary for the improvement and navigation. The right of eminent domain is a common-law right inherent in every sovereignty, unless denied by its fundamental law. It is a right which exists in the federal government, and may be exercised by it within the states, so far as necessary to the enjoyment of the powers conferred

upon it by the Constitution. Congress may create a special tribunal for condemnation purposes, adopt the tribunals of the state, or authorize purely common-law proceedings in the courts of the United States. In the absence of direction by Congress, as to the tribunal or mode of procedure, an action at common law will lie in the name of the United States in the district in which the land to be condemned lies."

Notwithstanding the enabling act of 1888, authorizing the representative of the government to adopt the commission plan as it exists in the States for the ascertainment of the amount of damages to be awarded to the property owner, it is merely modal and directory. The government may proceed in its own courts at common law, with the right of trial by jury. Kohl v. U. S., 91 U. S. 367, 23 L. Ed. 449; Ft. Leavenworth Rd. v. Lowe, 114 U. S. 525, 5 Sup. Ct. 995, 29 L. Ed. 264; Luxton v. North River Bridge Co., 147 U. S. 337, 13 Sup. Ct. 356, 37 L. Ed. 194; Chappell v. U. S., 81 Fed. 766, loc. cit. 26 C. C. A. 600; Chappell v. U. S., 160 U. S. 499, 510, 16 Sup. Ct. 397, 40 L. Ed. 510. And this latter course is frequently pursued by the government in condemnation proceedings. Had it adopted the common-law course of procedure in this instance, would it have been bound by any requirements of the Minnesota statute as to what the judgment should contain, or when interest on the award of damages should attach? In the proceeding at common law before a jury the verdict of the jury assessing the amount of the damages would not become effective until the same should be affirmed by the judgment of the court, and interest would not attach until after judgment of condemnation, conformably to section 966, Rev. St. (U. S. Comp. St. 1901, p. 700). It could not have been in the contemplation of Congress, in adopting the conformity act of 1888, that the government should thereby become amenable to the payment of any interest anterior to the rendition of judgment, which a state Legislature might adopt in the admeasurement of the just compensation to be awarded to the property owner, different from what it would be under the common-law procedure. The authority of the Secretary of War to pay for the property of the owner is conferred by section 4872, Rev. St. U. S. (U. S. Comp. St. 1901, p. 3376), which declares that:

"The Secretary of War is authorized and required to pay to the several owner or owners respectively, the appraised value of the several pieces or parcels of real estate as specified in the appraisement of any such courts or to pay into any of such courts by deposit as hereinbefore provided, the appraised value; and the sum necessary for such purpose may be taken from any moneys appropriated for the purpose of national cemeteries."

In Luxton v. North River Bridge Company, 147 U. S. 337, 341, 13 Sup. Ct. 356, 358, 37 L. Ed. 194, Mr. Justice Gray, speaking of certain provisions of the New Jersey statute in condemnation proceedings, said:

"The provisions of the statute of the state in this particular being inapplicable, and the act of Congress containing no special direction on the subject, the only reasonable conclusion is that the report of the commissioners appointed by the Circuit Court of the United States must be returned to the court which appointed them, be made matter of record therein, and be subject to be confirmed or set aside by that court. And if a trial by jury should be had, by way of appeal from the assessment of the commissioners, it must likewise be in the same court. The case throughout, from the application of the corporation for the appointment of commissioners to assess damages to the

owner of the land proposed to be taken, until judgment upon the award of
the commissioners, or upon the verdict of a jury, assessing those damages, re-
mains in the Circuit Court of the United States and under its supervision and
control."

Indeed, it is an entire misconception of the law that the Legislature
of any state, as against the United States, can fix any admeasurement
of the just compensation to be awarded to the owner of the property.
Mr. Justice Brewer, in Monongahela Navigation Co. v. U. S., 148 U. S.
312, loc. cit. 13 Sup. Ct. 622, 37 L. Ed. 463, speaking of the Act of
Congress in question there, said:

"By this legislation Congress seems to have assumed the right to determine
what shall be the measure of compensation. But this is a judicial and not a
legislative question. The Legislature may determine what private property
is needed for public purposes. That is a question of a political and legislative
character; but, when the taking has been ordered, then the question of com-
pensation is judicial. It does not rest with the public, taking the property,
through Congress or the Legislature, its representative, to say what compensa-
tion shall be paid, or even what shall be the rule of compensation. The Con-
stitution has declared that just compensation shall be paid, and the ascertain-
ment of that is a judicial inquiry. In Charles River Bridge v. Warren Bridge,
11 Pet. 420, 571, 9 L. Ed. 773, 938, Mr. Justice McLean in his opinion, referring
to a provision for compensation found in the charter of the Warren bridge,
uses this language: 'They (the Legislature) provide that the new company
shall pay annually to the college, in behalf of the old one, £100. By this provi-
sion it appears that the Legislature has undertaken to do what a jury of the
country only could constitutionally do—assess the amount of compensation to
which the complainants are entitled.'"

The majority opinion in effect concedes that the Minnesota statute
is not obligatory upon the United States Circuit Court in respect of the
matter here in contestation, for it says:

"Without holding that the requirement for payment of interest is one of
the 'modes of proceeding' which, by section 2 of the act of August 1, 1888, is
made compulsory upon the courts of the United States, we are satisfied to
conform to it as a palpably fair and reasonable method of performing the
indispensable condition to the exercise of the right of eminent domain, name-
ly, of making 'just compensation' for the land as it stands at the time of
taking. * * * It is better, when possible, to act in harmony rather than in
conflict with the established policy of a state."

As already shown, the established policy of the state in the matter
of fixing the just compensation to the owner is entirely subordinate to
the right and the manner of procedure by the government in the exer-
cise of its superior right of eminent domain. This being so, the con-
clusion of the majority opinion that the allowance of interest under the
Minnesota statute is to be followed, because it is "a palpably fair and
reasonable method of making just compensation," can rest alone upon
the proposition that it is a judicial question for the court. If so, the
allowance of the interest adjudged is in conflict with what the Supreme
Court of the United States has held in Shoemaker v. U. S., 147 U. S.
284, 321, 13 Sup. Ct. 361, 37 L. Ed. 170. In that case the condemnee
claimed interest from the initiation of the proceedings until the money
was paid into court. Of this, the court said:

"The argument shows that the interest claimed was for the time that
elapsed between the initiation of the proceedings and the payment of the
money into court. The vice of this contention is in the assumption that the

lands were actually condemned and withdrawn from the possession of their owners by the mere filing of the map. Interest accrues either by agreement of the debtor to allow it for the use of money, or, in the nature of damages, by reason of the failure of the debtor to pay the principal when due. Of course, neither ground for such a demand can be found in the present case. No agreement to pay the interest demanded is pointed to, and no failure to pay the amount assessed took place. That amount was not fixed and ascertained till the confirmation of the report. Then some of those entitled to the assessments accepted their money, the plaintiffs in error declined to accept, and the amounts assessed in their favor were paid into court, which must be deemed equivalent to payment.

"It is true that, by the institution of proceedings to condemn, the possession and enjoyment by the owner are to some extent interfered with. He can put no permanent improvements on the land, nor sell it, except subject to the condemnation proceedings. But the owner was in receipt of the rents, issues, and profits during the time occupied in fixing the amount to which he was entitled, and the inconveniences considered and allowed for in fixing the amount of the compensation. Such is the rule laid down in cases of the highest authority."

It is no answer to this to say that the case at bar is to be differentiated from the Shoemaker Case, in that the condemnee there demanded interest from the date of the institution of the proceedings. The kernel of the ruling of the Supreme Court is that the reason for disallowing any interest anterior to the judgment of condemnation is that the "amount was not fixed and ascertained until the confirmation of the report," and that the retention of the possession of the property by the condemnee is equivalent to the interest. As already shown, the Secretary of the Treasury is to pay the amount ascertained by the judgment of the court to be the appraised value, and that the money appropriated therefor is in the treasury, ready to be paid. Until the judgment of condemnation, the government is not required to pay anything, as the obligation to pay and the right to take and enter upon the property and the right of the property owner to demand payment are correlative and contemporaneous. Until that time the possession and enjoyment of the property remain with the owner, and, in contemplation of general common law, until judgment of condemnation there can be no default on the part of the government as the basis for imposing interest. In the absence of the requirement of the Minnesota statute, attaching interest from the date of the report of the commissioners, it never would have occurred to any court, in rendering judgment of condemnation, to have added as part of the compensation for the property the interest in question; but the court, according to the customary practice, would have rendered judgment of confirmation of the award made by the commissioners, which would have borne interest only from that date until payment by the government. Up to the time of confirmation of the award by the judgment of the court the government could have discontinued the proceeding; and in such case it would not have been liable for the interest imposed by the court.

In my opinion, the judgment of the Circuit Court is contrary to law, and should be reversed, and the case remanded, with directions.